**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| COREY JONES, for himself and all other similarly situated, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No. 5:25-cv-00583 |
| WESTERN FLYER EXPRESS, LLC, | ) | |
| *Defendant.* | ) | |

**REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendant Western Flyer Express, LLC ("WFX") submits the following Reply in Support of its Motion to Dismiss, Doc. No. 4, pursuant to FRCP 12(b)(6) and FRCP 9.

Respectfully Submitted,

______/s/Christopher M. Scaperlanda_________

Christopher M. Scaperlanda, OBA No. 31703
R. Baxter Lewallen, OBA No. 34336
McAfee & Taft A Professional Corporation
8th Floor, Two Leadership Square
211 North Robinson
Oklahoma City, OK 73102-7103
Telephone: (405) 235-9621
chris.scaperlanda@mcafeetaft.com
baxter.lewallen@mcafeetaft.com

## I. Contractual Conditions Precedent Compliance Must Be Pleaded Under Rule 9.

In the COA, two contractual conditions precedent required compliance before suit: (1) Mandatory written notice of disputed charges within 30 days after receiving settlement statements, and (2) Mandatory good faith mediation. Under Rule 9, Plaintiff was required to plead compliance with both conditions precedent, yet pleaded neither. This failure is a sufficient basis to dismiss all allegations, and particularly the TIL allegations. Plaintiff says, despite Rule 9, he didn't have to plead ***any*** compliance. Plaintiff is wrong.

In *Castle Energy v. Universal Ensco* 2024 WL 3237540 (S.D. Tex. Jun. 5, 2024), plaintiff did not plead compliance with contractual conditions precedent. This doomed the Complaint because "[w]hether [plaintiff] can allege sufficient facts to plausibly show it satisfied certain contractual conditions precedent is material to determining whether its breach of contract claim can survive dismissal." *Id* at * 1. The same applies here. Plaintiffs' reliance on *Anderson,* 933 F.2d 1500, 1505 (10th Cir. 1991) is misplaced. *Anderson* stands for the narrow proposition that compliance with a condition precedent which is also an element of the cause of action need not be separately pled. *See id.* ("We find no indication in the rules or the case law that the special pleading requirements of Rule 9(c) were meant to apply more broadly to pleading the basic elements of a cause of action."). This holding has nothing to do with the situation here, where Plaintiff contracted to comply with certain conditions precedent before filing suit. His failure requires dismissal of the Complaint.[1]

[1] Plaintiff says *Twombly*/*Iqbal* does not apply to pleading compliance with conditions precedent. This is an unsettled area of law. *Compare Castle Energy*, *supra*, *with Boyer v. Chesapeake*, 2015 WL 6686688 (W.D. Okla. Oct. 29, 2015). Here, it is irrelevant what pleading standard should be applied to conditions precedent, because Plaintiff's Complaint makes ***no*** mention of compliance with conditions precedent. Regardless of what the standard is, the Complaint fails to meet it.

## II. Plaintiff Was Required to Mediate His Claims in Good Faith.

WFX was not required to give Plaintiff any information in advance of mediation. That WFX did not agree to provide Plaintiff with certain class information is irrelevant to Plaintiff's obligation to mediate ***his*** claims in good faith. Even if WFX had refused to give Plaintiff ***any*** class information, Plaintiff would have had to mediate ***his*** claims in good faith. Plaintiff would not discuss his individual claims at mediation. He didn't even submit a mediation statement, demonstrating lack of good faith. *See Nick v. Morgan's Foods*, 99 F.Supp.2d 1056, 1061-62 (E.D. Mo. 2000) (Sanctioning party for failing to mediate in good faith, explaining "[g]ood faith participation in ADR includes providing the neutral with a mediation memorandum"). Failure to mediate in good faith is grounds for dismissal.

## III. The COA's 30-Day Notice Provision is Enforceable and Bars the TIL Claims.

Regarding the COA's 30-day notice provision, case law is consistent: If there is a mandatory 30-day notice provision in a COA (as here) and the contractor fails to give notice of a dispute within the 30-day window, claims based on the dispute (including TIL claims) are barred. If (as in *Piquion*) the provision is not mandatory, the claims are not barred.

A. The COA notice provision applies to all chargeback items: The core of Plaintiffs' argument his TIL claims are not be waived by his failure to timely object under the COA's notice provision is, "the plain language of the notice provisions in the COA makes clear that these provisions apply only to claims arising from errors in the settlement statements, and Mr. Jones has alleged TIL violations that have no nexus to the settlements." Doc. 6 at 6. This makes no sense. The COA's notice/waiver provision applies to "***any*** objection to ***any*** chargeback item regarding which [Plaintiff] does not notify [WFX], in writing, within

thirty (30) days of the chargeback." Doc. 1-1, PDF p. 25, ¶ 3. All TIL claims inherently have a "nexus to the settlements" because the purpose of TIL rules is to, as Plaintiff notes in his Response, "compel disclosure" of what is being charged back. TIL violations occur when settlements (a) inaccurately reflect what is being charged back or (b) accurately reflect chargebacks not permissible under law or disclosed in contract. Plaintiffs' attempt, unsupported by law, to create a distinction that some TIL claims are based on settlements and others are not, fails, because there are no TIL claims with "no nexus to" settlements.

Plaintiff's escrow example, misleading as it is, illustrates this. Plaintiff claims "Defendant took deductions for items that constitute an escrow, it failed to pay them interest on the funds while they were in escrow, and it failed to return the funds to the drivers within 45 days of the dates their employment ended." Doc 6 at 7. This references Plaintiffs' claim truck maintenance deductions were escrow related, even though the plain language of the COA, and his CMV lease shows it was not a WFX charge and not an escrow.[2] Even taken as true, whether escrow deductions were made, interest was paid, and escrow funds were returned would all appear on a settlement statement. If true, this is exactly the kind of claim Plaintiff had to give notice of to avoid waiver. He didn't.

B. <u>The COA made documents available to verify the settlement statements:</u> Plaintiff says he can avoid the 30-day notice/waiver provision because, in addition to violating TIL by making improper chargebacks, WFX violated TIL regulations when it did not give him,

[2] WFX doesn't charge for truck maintenance. Per the payment designation provisions in Mr. Jones' equipment contract and the COA, WFX simply deducts the amount from settlements and forwards it to the equipment leasing company. The deduction for maintenance is explained in the equipment lease Jones entered, not the COA, and it is not escrow, it's a flat fee maintenance program. With the leasing company's permission, WFX produced the truck lease to Plaintiffs prior to mediation.

with settlements, underlying documentation. He says he didn't have information to confirm if the settlement were correct. To hear Plaintiff tell it, every time WFX issued settlement statements (every 2 weeks), it had to give every contractor a stack of supporting documentation or violate TIL. Neither case law nor the TIL regulations support Plaintiffs' onerous interpretation. 49 CFR 376(h), governs chargebacks, providing, "[t]he lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge." Critically, "making the documentation of the deduction available upon request does not violate §376.12." *OOIDA v. New Prime*, 2002 WL 33957203 at *7 (W.D. Mo. Aug. 14, 2002). *See also, Luxama v. Ironbound*, 2021 WL 1153145 at *17 (D. N.J. Mar. 26, 2021) (Stating, language "if the driver requests a copy of the [insurance] policy, he or she will be provided with it," satisfied the 376.12(h) requirement of affording copies of supporting documents); *and see, OOIDA v. CR England, Inc.*, 508 F.Supp.2d 972, 977 (D. Utah 2007) (Finding "Defendant failed to provide documentation of these charges ***when requested***" violated 376.12(h)). WFX's COA provision, 9-9.4, is §376.12(h) compliant:

> CARRIER shall keep records in the ordinary course of business related to each of CO's contracted transits, which CO may request an opportunity to review…Either party may make a request for information pursuant to this Section to be produced in a reasonable time frame, no less than five (5) days.

Doc. 1-1 at PDF 20.[3] Plaintiff does not allege he requested documents and was denied,[4] and it is not a basis for Plaintiff to avoid the requirement to give timely notice of disputes.

[3] Even *Brant*, cited by Plaintiff, Doc. No. 6 at 8, supports this when it directs "the lease must specify *when* this information is to be made available"—which Sect 9-9.3 of the COA does.

[4] If Plaintiff's assertion about lack of documents was true, he wouldn't have been able to sue. Plaintiff mediated <u>and</u> sued without information he now says is needed just to discern his disputes.

C. Plaintiff's unconscionability argument is unsupportable: COA Sections 6.6/App A(3)[5], 15, and 17, do not require drivers to travel on short notice or to inconvenient venues. They do not reduce the statute of limitations or require drivers to sue sooner than they would otherwise. The COA's waiver provision only requires a contractor give some form of written notice of objection within 30 days. An email suffices. When a contractor gives timely notice, the claim is not waived, s/he has the entire statutory limitations period to mediate any/all disputes in an agreed forum or even by video, and to bring suit if necessary. COA Sec. 15. As set forth in the Motion, these types of clauses are not unique to the transportation industry and are commonly enforced, (*See Mervyn* and *Stampley*), in all manner of contracts, including telecom, warehousing, shipping, tool rental, and bonding obligations.[6] Plaintiff cites no case in which a notice/waiver provision like this one, was held unconscionable.

---

[5] Note, COA (Doc. 1-1) App. A(3), mistakenly cites to Section 6.4, instead of its parallel language in 6.6.

[6] (Telecom) *Puerto Rico Tel. v. SprintCom*, 662 F.3d 74, 97 (1st Cir. 2011) (Charges billed pursuant to the Agreement and not objected to within thirty days to be treated as if they were correct and binding on the parties.); *Intervision Sys. Techs., v. Intercall*, 872 N.W.2d 794, 800 (Neb. 2015) (Finding, a majority of courts in other jurisdictions addressing contract provisions that require notice of a dispute within an amount of time shorter than the statute of limitations have found them to be enforceable.); (Warehousing) *Richielieu Foods v. New Horizon Warehouse Dist.*, 67 F. Supp. 3d 903, 912 (N.D. Ill. 2014) (Failure to dispute invoice within contractual 30-day notice period was a waiver); (Shipping) *Barber Auto Sales v. United Parcel Servs.*, 494 F. Supp. 2d 1920, 1296 (N.D. Al. 2007) (Holding, UPS entitled to judgment on the pleadings on breach of contract claim on any claim Plaintiff did not give notice of the disputed charges within 180 days of receiving the invoice, as claims are barred for failure to meet a contractual condition precedent.); (Tool Rental) *Mathews v. Home Depot USA, Inc.*, 2025 WL 1226310, at *4 (N.D. Ga. Feb. 14, 2025) (Where Plaintiffs did not provide written notice they contested charges within the required 25-day window, Plaintiffs irrevocably waived their right to dispute their charges under the contract prohibiting the lawsuit.); (Bonding) *Flintco v. Total Installation Mgmt. Specialists*, 2025 OK 35, ¶ 53 (Barring claims, where Plaintiff failed to give timely notice to trigger bonding obligation, a condition precedent to recovery, saying, "Courts should not read into a contract words or provisions it does not contain. And, we will not make a better contract than the parties themselves have seen fit to enter into, or alter it for the benefit of one party to the detriment of another,").

In contrast, the contracts in the Illinois cases cited by Plaintiff ***did*** shorten the statute of limitations, to ***ten days***. *See Potiyevskiy v. TM Transp.*, 2013 WL 6199949 (IL App. Nov. 25,2013) (Drivers required to initiate arbitration proceedings (and incur filing fees) 10 days after receiving settlements); *Tsybikov v. Dovgal*, 2020 WL 3489489 at *1 (N.D.Ill. Jun. 26, 2020) ("[T]he exact same provision" as *Potiyevskiy* at issue). The 30-day notice provision here applies to Plaintiff's claims and is enforceable. Plaintiff did not plead compliance and especially because he did not comply, it is grounds for dismissal of the TIL claims.

**IV. The individual TIL items were proper chargebacks and were disclosed.**

Because there is not space to address each of Plaintiff's TIL claim responses in detail, a short response to each: Contingent Payments: Plaintiff says the COA violates 376.12(f) because it requires provision of "bills of lading or shipping orders to which no exceptions have been made." [7] Not true. 376.12(f) permits payment conditioned on "those documents necessary for the authorized carrier to secure payment from the shipper…," which is reflected in the COA, Sect. 6, stating the contractor gets paid within 15 days after submitting documents necessary for CARRIER to secure payment. It does not say a bill of lading to which no exceptions (shortages/damages) have been made; Fuel charges: Plaintiff's say TIL regulations require fuel charges to be passed through as-is, with no markup. This is unsupportable. *See Landstar II*, 622 F3d at 1322, (*Quoting Swift*):

[7] Plaintiff's complaint about exceptions to a bill of lading (BOL) is misleading. A BOL is a legal document key to laws and rules on interstate commerce. See, e.g., 49 USC Chpt 801, Part 1035, and §14706. A BOL or proof of delivery (POD) is required for a carrier to be paid, and 49 CFR 376.12(f) states it can be a requirement for payment to the contractor. Exceptions (shorts and damages) are complex as to the extensive rules on payment of a common carrier for transit. A BOL to which no exceptions have been made doesn't change the fact of transit, and completion of transit generally triggers the 15-day TIL required payment. Consistent with TIL regulations, the COA does not require a BOL without exceptions, just a BOL/POD sufficient for shipper payments.

> The validity of the chargeback for fuel that an owner-operator purchases from a carrier…does not depend on…the amount of whatever additional… fee the carrier adds to its discounted price, i.e. the actual amount of the…mark-up, but on whether the amount…charged-back to the owner-operator, as noted on the settlement statement, is…the same price disclosed to the owner-operator…at the time he or she chose to purchase the fuel from the carrier.

Mobile Communications: Plaintiff's Response misunderstands the regulations. Plaintiff says ELDs are a forced purchase by WFX as the regulations "required Defendant to do nothing more than install an ELD in Mr. Jones's truck and ensure that he used it." This is absurd. *See*, Ex. 1. The ELD mandate is not a standalone, but part of the Safety regulatory scheme including Hours of Service (HOS) monitoring and reporting, supported by the "exclusive possession" rules. Carriers and drivers have responsibilities for complying with HOS, but Carriers do more. *Id.* Also, caselaw confirms, because insurance is required to operate, a motor carrier can pass the cost through to contractors. ELD is no different; the carrier incurs the cost of the device *and* the data service. Pursuant to *Mayflower* and other cases discussing government/customer required charges, the same is properly subject to chargeback; Insurance: It is appropriate to deduct the costs of insurance. *See Mayflower, and Landstar II*, 622 F.3d at 1320 (Stating, §376.12(h) only requires the carrier to disclose in the lease there is a fee to be charged, (*such as in* COA Section 3.4, App A 3(a)xi,) and follow up with settlement statements that illustrate the final amount charged back.) While not stated in the cases, that is likely true because insurance costs are oft-changing. Plaintiff offers no legal support to his contention that a number must be stated; EBE. Plaintiff acknowledges TIL regulations exist to ensure a contractor is aware of charges before taking a load, but then ignores all the ways he was aware of EBE before taking that first load, and,

how every subsequent EBE charge was on his settlements. *Also see,* COA Sect. 3.4.2, 3.4.4, 3.5.1, 6.7, and 9, which all refer to the myriad of separate agreements a CO authorizes such chargebacks through, which are incorporated by reference or available on request. And, of course, if it could be said these EBE-related disclosures and agreements weren't enough, Plaintiff fails to address what nearly all his cited cases require, for Plaintiff to plead sufficient facts demonstrating he was damaged by the non-disclosure (*i.e.,* he could have received a better price elsewhere). *See, e.g., Brant v. Schneider*, 43 F.4th 656, 678 (7th Cir. 2022) ("To state a [TIL] claim, [operator] must allege facts from which we can plausibly infer that [carrier] violated one or more of the regulations and that he was damaged as a result"); Truck Refurbishment, DLP, ATBS, Physical Damage: WFX did/does not concede the COA didn't disclose the chargebacks for third-party pass-throughs, it cites the COA App A (3)(a)(x), "All amounts authorized by CO to be deducted from Settlements pursuant to a purchase or lease contract to which CO is a party." (Doc. 1-1 at PDF 26). Like EBE, *supra*, various COA sections speak to CO granting authority for chargebacks in separate writings and agreements. *See*, COA Sect 6.7 (payment designations arising from CO's agreements with third parties will be produced on request). Plaintiff cites no law for the proposition that every such third-party agreement, which Plaintiff is a party to and WFX is not, must be listed for disclosure to be complete. In whole, Plaintiff's TIL claims fail as a matter of law and should be dismissed. This failure is about applied law, not procedural niceties. It cannot be cured by amendment. *See, Twombly*, and *Iqbal.*

**V. Plaintiff's misclassification claims fail under a 12(b)(6) analysis.**

It is wholly appropriate for a Motion to Dismiss to address allegations as they are

pleaded, which is why WFX's argument focuses to a large degree on control: control is the predominate focus of Plaintiff's Complaint. And, while there are 6 factors in the *Acosta* test, (aka, *Baker*), even discounting for duplicate allegations, almost half of Plaintiff's misclassification allegations are related to control. Also, control was not the only factor WFX raised in its MTD, elements of other factors are discussed: permanence, pg. 31 (availability for driving opportunities, providing services to others); worker's investment, profit/loss, and degree of skill (payment of taxes and fees, independent business judgment, investments in insurance and business programs, non-revenue producing/personal use of CMV) pgs 32 and 33; and even those allegations not applicable to the *Acosta/Baker* factors, pgs 34 and 35. What's more, Plaintiff's argument these issues are inappropriate for dismissal is incorrect. In a case similar to the present case, the court in *Derolf v. Risinger Bros. Transfer, Inc*., 259 F.Supp.3d 876 (C.D. Ill. 2017) undertook, on motion to dismiss, a detailed economic realities analysis of a driver agreement, with very similar provisions to the WFX COA (and very similar allegations to the allegations made by Plaintiff).[8] *Derolf,* stated, inquiry into whether a plaintiff is an employee or independent contractor is a question amenable to a Rule 12(b)(6) analysis, even though it is fact-intensive, and, analyzing the pleadings and contract, determined the putative class plaintiffs could not be classified as employees. Thereafter, it dismissed the claims. *Id*. at 879, 884.

Matching the *Derolf* analysis of economic realities to the WFX COA, reveals WFX Contractors: did not have to perform the work themselves, but could hire others. *Derolf* at

[8] *See* Ex. 2, Derolf Complaint.

880, *and see* Doc 1-1, Sects. 2, 3.1 - 3.1.1.2, 3.1.3, 5.1-5.5, 10.1.1; must provide to the carrier a CMV to lease for which they are the owner and be responsible to service and maintain per applicable law. *Id*. at 880, 882, *and see* Doc 1-1 Sects. 1, 3.1, 3.4.1-3.4.3.1; select load assignments, routes, and breaks. *Id*., *and see* Doc 1-1 5.2; use equipment leased to it for other carriers even if such permission was conditional. *Id*. at 881, *and see* Doc 1-1 3.2.1, 3.3.2, 3.4.5-3.4.5.4; profits depended on how much they worked, which they controlled. *Id*. at 882-883, *and see* Doc 1-1 3.3, 3.3.1, 3.4, 5.2, 6.7, App A. 1(a); and, they possess special skills because they drive a commercial truck and control so many aspects of their own business. *Id*. at 883, *see* Doc 1-1 cites above, and 3.5. The *Derolf* court dismissed the complaint because, on balance, more factors favored contractor status. *Id*. at 884. It adjudged 4 of the 6 factors (and found "dependence" (not an economic realities factor)) in favor of the carrier. *Id*. *Derolf* noted the special skill factor was not alleged, but found it favored Defendant; and found one factor, integral part of the hiring entity business, weighed in favor of the plaintiffs. *Id*. at 883. As to WFX, the integral factor does not weigh in favor of Plaintiff. In *Derolf,* the motor carrier used only contractors, no employed drivers, so the contractors truly were integral to its business. Because WFX offers employee and contractor driver opportunities, contractors are not integral to its business. In conclusion, under FLSA or Oklahoma law, the same economic realities analysis is applied to the Complaint and COA, and Plaintiffs claims fail under it and 12(b)(6).

WHEREFORE, upon its submissions, WFX respectfully requests the Court to dismiss Plaintiff's Complaint, and grant WFX its costs and fees as provided in the COA.

## CERTIFICATE OF SERVICE

I hereby certify that on September 4, 2025, I electronically transmitted the attached document to the Clerk of Court using the Electronic Case Filing System for filing. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants in the ECF System.

*/s/ Christopher M. Scaperlanda*
Christopher M. Scaperlanda