**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| CORY JONES, on behalf of himself and all others similarly situated, | ) | |
| Plaintiff, | ) | Civil Action No. 5:25-cv-00583-R |
| v. | ) | **JURY TRIAL DEMANDED** |
| WESTERN FLYER EXPRESS, LLC, | ) | |
| Defendant. | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiff Cory Jones ("Plaintiff") brings this action against Defendant Western Flyer Express, LLC ("Defendant") on behalf of himself and all others similarly situated. In support thereof, Plaintiff alleges as follows:

**NATURE OF THE ACTION**

1. Defendant is a trucking company.

2. Plaintiff leased a tractor and/or trailer from Defendant and worked for the company as a truck driver.

3. Plaintiff alleges that Defendant subjected him and certain other drivers to practices and/or policies that are illegal and caused them to suffer damages as a result.[1]

4. Specifically, Plaintiff alleges the following:

a. Defendant violated Oklahoma wage laws because the company misclassified Plaintiff and certain other drivers as independent contractors when

[1] Unless otherwise noted, the relevant time period for each class and/or claim set forth herein is the applicable statute of limitations.

they are, as a matter of law, employees, failed to pay them all the wages they were entitled to receive, failed to pay their wages on a timely basis, and/or took unlawful deductions from the wages they earned.

b. Defendant violated the Truth-in-Leasing regulations (the "TIL regulations"), 49 C.F.R. § 376, *et seq*., because the company entered leases with Plaintiff and certain other drivers that did not include mandatory terms and/or disclosures, failed to timely pay compensation, failed to adhere the terms of the leases, failed to timely return all escrow funds, failed to properly use, maintain, and/or account for drivers' escrow funds, failed to pay interest on escrow funds to drivers, and/or took illegal deductions from drivers' compensation.

c. Defendant breached a contract with Plaintiff because it agreed to mediate any disagreement or dispute regarding the subject matter of the contract or their relationship but it refused to mediate multiple disagreements and disputes that Plaintiff raised with the company.

5. Plaintiff seeks damages and other relief on behalf of himself and all other similarly situated drivers for Defendant's violations of Oklahoma wage laws including, without limitation, all unpaid wages, reimbursement for any/all prohibited deductions, liquidated damages, civil penalties as appropriate, appropriate ancillary relief, injunctive relief, interest, attorneys' fees, costs, and all other relief to which they are entitled.

6. Plaintiff seeks damages and other relief on behalf of himself and all other similarly situated drivers for Defendant's violations of the TIL regulations, including, without limitation, reimbursement for any/all unlawful deductions taken from drivers' compensation,

reimbursement for any/all amounts improperly retained, appropriate ancillary relief, injunctive relief, interest, attorneys' fees, costs, and all other relief to which they are entitled.

7. Plaintiff seeks damages and other relief on behalf of himself for Defendant's breach of contract, including, without limitation, injunctive relief, attorneys' fees, reimbursement for mediation expenses, interest, and all other relief to which he is entitled.

**PARTIES**

8. Plaintiff Cory Jones is an adult resident of Texas. He worked for Defendant as a truck driver from approximately March 2024 to June 2024.

9. Plaintiff brings his Oklahoma wage law claims under Fed. R. Civ. P. 23 on behalf of the following classes:

> *Contracted Operator Class*
>
> All individuals who have executed Contracted Operator Agreements, or similar agreements, with Defendant.
>
> *Unpaid Training Class*
>
> All individuals who have attended an unpaid training with Defendant.

10. As detailed below, each proposed Oklahoma wage class meets the requirements of Rule 23 for class certification.

11. Plaintiff brings his TIL claims under Fed. R. Civ. P. 23 on behalf of the following class:

> *TIL Class*
>
> All individuals who have executed Contracted Operator Agreements, or similar agreements, with Defendant at any time since February 27, 2023.

12. As detailed below, the proposed TIL class meets the requirements of Rule 23 for class certification.

13. Defendant Western Flyer Express, LLC is an Oklahoma company, and it has corporate offices in Oklahoma City, Oklahoma.

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction over Plaintiff's TIL claims under 28 U.S.C. § 1331.

15. The Court has supplemental jurisdiction over the Oklahoma wage claims of Plaintiff and similarly situated drivers under 28 U.S.C. § 1367 because those claims are part of the same case or controversy as the claims Plaintiff and the class members have asserted under the TIL, over which the Court has original jurisdiction.

16. The Court has personal jurisdiction over Defendant because Defendant is an Oklahoma corporation, the company has corporate offices in Oklahoma, Defendant does business in Oklahoma, and the Contracted Operator Agreement ("COA") contains a choice of law and venue clause which states that any lawsuit arising out of or materially involving the COA shall be brought in a state or federal court that serves Oklahoma County, Oklahoma.

17. The Court has personal jurisdiction over Plaintiff and the putative classes because they performed work in Oklahoma for an Oklahoma company, and because of the choice of law and venue clause in the COA.

18. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims set forth in this complaint occurred in this judicial district, and because of the choice of law and venue clause in the COA.

19. Any/all conditions precedent occurred or were performed prior to the filing of Plaintiff's claims.

## FACTS

**A. Independent Contractor Misclassification.**

20. Defendant is a trucking company.

21. Defendant provides motor vehicle transportation services of goods and/or freight for compensation.

22. Defendant engages drivers to perform the transportation services that the company provides to customers.

23. Defendant classifies drivers as either employees or independent contractors.

24. Upon information and belief, Defendant has classified 40 or more drivers as independent contractors.

25. Defendant's drivers have the same general duties and/or responsibilities regardless of whether they are classified as an employee or independent contractor.

26. Upon information and belief, Defendant requires all drivers who are classified as independent contractors to sign a COA, or similar agreement.

27. Upon information and belief, the COA is a generic document that Defendant uses with all drivers the company classifies as independent contractors.

28. The COA is a contract of adhesion.

29. Defendant presents the COA to drivers on a take-it-or-leave-it basis, without the opportunity for negotiation.

30. Upon information and belief, Defendant does not separately negotiate the terms of each COA with each driver the company classifies as an independent contractor.

31. The COA automatically renews every 12 months indefinitely until a party to the agreement terminates it.

32. Any party to a COA may terminate the agreement for any reason.

33. Drivers who sign a COA, or similar document, are known as "Contracted Operators."

34. Defendant classifies Contracted Operators as independent contractors.

35. Contracted Operators do not require specialized skills to perform their responsibilities and/or duties.

36. A Contracted Operator's earning potential is not materially increased by becoming a driving expert or by obtaining advanced degrees or training.

37. Plaintiff executed a COA on or about March 5, 2024.[2]

38. Defendant engaged Plaintiff as a Contracted Operator from approximately March 2024 to June 2024.

39. As a Contracted Operator, Plaintiff performed the transportation services that Defendant provided to its customers.

40. Defendant classified Plaintiff as an independent contractor.

41. As a Contracted Operator, Plaintiff had the same and/or similar duties and responsibilities as drivers whom Defendant classified as employees.

42. Defendant's classification of Plaintiff and other Contracted Operators as independent contractors violated Oklahoma wage laws.

43. Plaintiff and Defendant's other Contracted Operators were the company's employees under Oklahoma wage laws.

44. At all times during Plaintiff's tenure with Defendant, the company controlled and directed the performance of Plaintiff's work.

---

[2] Plaintiff's COA is attached as Exhibit 1.

45. The COA states that Contracted Operators are obligated to perform transportation services for Defendant as long as the agreement is in effect. *See* Ex. 1 at 1, ¶ 1.

46. The COA states that Plaintiff "shall provide [Defendant] with 'Driving Services,' … which include, but are not limited to …"fulfill[ing] the capacity needs of [the company] in servicing its interstate commerce customers' freight shipment requests; operating the Leased Equipment and Other Equipment to points of cargo pick-up and delivery… communicat[ing] with [Defendant] for information and direction required by Applicable Law." *Id*.

47. Defendant unilaterally determined:

i. how Plaintiff was compensated;

ii. the amount of compensation Plaintiff received; and

iii. when Plaintiff was compensated.

48. Defendant gave Plaintiff instructions regarding how to perform the transportation services he provided.

49. Defendant told Plaintiff when and/or where to collect shipments for transport and when and/or where to deliver them.

50. Defendant required Plaintiff to follow certain standards, practices, and/or policies while performing transportation services for the company.

51. Defendant monitored and/or supervised Plaintiff while he performed transportation services.

52. Defendant used various devices to monitor and/or supervise Plaintiff while he performed transportation services.

53. Defendant supplied Plaintiff with equipment he needed to perform transportation services, such as, without limitation, mobile communications and tracking devices.

54. Pursuant to the COA, Plaintiff was required to maintain regular communication with Defendant about his availability to transport shipments, to timely respond to the company's communications, and to provide "reasonable written Notice [sic] to [Defendant] in the event [Plaintiff was] not able to accept tendered shipments for transportation for any reason." *Id*. at 4, ¶ 3.3.

55. Any failure by Plaintiff to abide by Defendant's communication practices and/or policies in the COA was grounds for the company to terminate him. *See id*.

56. Pursuant to the COA, Plaintiff was obligated to provide Defendant with any/all documents and/or records that related to the transportation services he performed for the company or his use of any equipment he leased from it. *See id*. at 17, ¶ 9.

57. Plaintiff was obligated to provide Defendant with such documents and/or records within five days of receiving a request for them from the company. *See id*.

58. Plaintiff could not use any equipment he leased from Defendant to perform transportation services for any other trucking company unless he received prior authorization from Defendant. *See id*. at 6, ¶ 3.4.5.

59. Defendant employs individuals as fleet managers who were responsible for managing and/or supervising Plaintiff and all other Contracted Operators while they performed transportation services for the company.

60. Defendant required Plaintiff to report all cargo claims to the company's fleet managers. *See id*. at 9, ¶ 3.7.

61. Plaintiff was subject to penalties if there was a cargo claim, and Defendant decided it arose out of, or in connection with, the transportation services he performed. *See id*.

62. Defendant required Plaintiff to report any/all accidents to the company. *See id*. at 9, ¶ 3.8.

63. Plaintiff was subject to substantial penalties if he failed to report an accident to Defendant within one hour from the time it occurred. *See id*.

64. The COA gives Defendant a unilateral right to change material terms in the agreement at any time such as, without limitation, the compensation drivers receive for their work. *See, e.g., id*. at 13, ¶ 6.1.3.

65. Contracted Operators, like Plaintiff, have no right to change any terms in the COA. *See generally id.*

66. Defendant had discretion over whether to pay Plaintiff for performing certain services, such as, without limitation, driving empty miles. *See id*. at 21, ¶ 1(a).

67. Upon information and belief, Defendant controlled and directed the work performed by all Contracted Operators in the same or similar manner that Defendant controlled and directed the performance of Plaintiff's work.

68. The transportation services performed by Plaintiff and Defendant's other Contracted Operators are part of the company's regular business – i.e. providing transportation services.

69. The transportation services that Plaintiff and other Contracted Operators perform are necessary to Defendant's business.

70. Defendant's primary source of revenue is the compensation it collects from customers for the transportation services performed by Plaintiff and other Contracted Operators.

71. At all times while performing transportation services for Defendant, Plaintiff and other Contracted Operators represent and/or advance Defendant's financial interests.

72. If Plaintiff or other Contracted Operators did not perform transportation services for Defendant, the company would suffer a significant loss of revenue.

73. Plaintiff was not engaged in an independently established trade, occupation, profession, or business during his tenure with Defendant.

74. Plaintiff worked so many hours each week for Defendant that he did not have time to perform transportation services for other companies.

75. Plaintiff's opportunities for earnings depended entirely on Defendant's need for his work.

76. Plaintiff was economically dependent on Defendant during his tenure with the company because, *inter alia*, he did not have time to perform transportation services for any other company.

77. Upon information and belief, Contracted Operators were not engaged in independently established trades, occupations, professions, or business during their tenure with Defendant.

78. Upon information and belief, Contracted Operators were economically dependent on Defendant during their tenure with the company because, *inter alia*, they did not have time to perform transportation services for other companies.

79. Upon information and belief, Contracted Operators' opportunities for earnings depended on Defendant's need for their work.

**B. Oklahoma Wage Law Violations.**

80. Defendant violated Oklahoma wage laws in numerous ways.

81. First, Defendant violated the Oklahoma wage laws that govern wage deductions.

82. Oklahoma employers may take deductions from employees' wages that are not required by legislation or court order only if they are memorialized in writing, and signed by the employee before the deduction is taken. *See* Okla. Admin. Code 380:30-1-7.

83. The COA states that Defendant may take deductions for expenses the company has borne, and that are specified in the COA as expenses Contracted Operators must bear. *See, e.g.*, Ex. 1 at 14, ¶ 6.5.

84. Defendant took deductions from Plaintiff's compensation during one or more weeks for various items that are not specified in the COA, such as, without limitation, "Enforcer Locks," "EBE," "Physical Damage Program," "Driver Legal Plan," "Truck Payment," and/or a truck refurbishment fee when his employment ended. *See generally* Cory Jones Operator Settlements.[3]

85. Upon information and belief, Defendant took the same or similar deductions from the compensation the company paid to all Contracted Operators.

86. The deductions were illegal because they were not memorialized in writing before Defendant took them.

87. The deductions are not specified in the COA for two reasons:

(a) Upon information and belief, they were for expenses that Defendant did not bear, in full or in part; and

(b) The COA does not state that Contracted Operators are required to bear those specific expenses.

[3] Attached as Exhibit 2.

88. By taking unlawful deductions from the compensation paid to Plaintiff and other Contracted Operators, Defendant violated Okla. Admin. Code 380:30-1-7 and caused them to suffer damages in the form of unpaid wages.

89. Second, Defendant violated the Oklahoma wage laws that govern payment for training required by employers.

90. If an Oklahoma employer requires employees to undergo training prior to employment, and such training is provided by the employer or is held at the place of employment, the employer must pay the employees for all the hours of the training. *See* Okla. Admin. Code 380:30-1-12.

91. Defendant required Plaintiff to attend a three-day training at its offices in Oklahoma City, Oklahoma before he started performing transportation services for the company.

92. Defendant did not pay Plaintiff for attending the training.

93. Upon information and belief, Defendant requires all drivers to attend training that the company conducts at its offices before they start performing transportation services for the company.

94. Upon information and belief, Defendant does not pay any drivers for attending the training.

95. By failing to pay Plaintiff or other drivers for attending mandatory training at Defendant's office, the company violated Okla. Admin. Code 380:30-1-12 and caused them to suffer damages in the form of unpaid wages.

96. Third, Defendant violated the Oklahoma wage laws that govern timing for wage payments.

97. Oklahoma employers must designate a regular payday that is within 11 days of the end date of a pay period. *See* Okla. Stat. 40, § 165.2.

98. Oklahoma employers must pay employees their agreed-upon wages within 14 days of the end date of a pay period. *See id*.

99. The COA states that Defendant will pay Contracted Operators within 15 days of the date they submit a non-exhaustive list of documents in proper form. *See* Ex. 1 at 13, ¶ 6.1.

100. The COA further states that Defendant will withhold payment to Contractor Operators unless/until they submit all "necessary paperwork" demanded by the company. *See id*. at ¶ 6.1.1.

101. By failing to designate a regular payday and/or by designating a regular payday that is 15 days or more after pay periods, Defendant violated Okla. Stat. 40, § 165.2 and caused Plaintiff and other Contracted Operators to suffer damages in the form of delayed and/or withheld wages.

102. Defendant also violated Okla. Stat. 40, § 165.2 by failing to pay Plaintiff all his agreed-upon wages within 14 days of the pay periods in which he earned them.

103. In exchange for performing transportation services, Defendant agreed to pay Plaintiff "$1.17 per mile for all dispatched miles, and $1.17 per mile for reasonable empty miles associated with all dispatches undertaken on behalf of [the company]," plus *ad hoc* accessorial charges. *See* Ex. 1 at 21, ¶¶ 1(a), (b).

104. During one or more weeks, Defendant failed to pay Plaintiff all his agreed-upon wages because the company took illegal deductions from his compensation, and those deductions reduced the amount of wages he received below the amount that Defendant agreed to pay them for his services.

105. For example, in Plaintiff's Operator Settlement dated May 20, 2024, he earned $1,536.21 based on the rate Defendant agreed to pay him for each mile he drove during the pay period, and the company took at least $603.20 in illegal deductions from Plaintiff's gross compensation for items labeled "EBE," "Physical Damage Program," and "Truck Payment." *See* Ex. 2 at 4.

106. Because of the illegal deductions, Defendant effectively paid Plaintiff $933.01 for his transportation services ($1,536.21 in agreed earnings minus $603.20 in illegal deductions).

107. Upon information and belief, Defendant failed to pay other Contracted Operators all their agreed-upon wages during one or more weeks because the company took illegal deductions from their wages as well.

108. Upon information and belief, Defendant failed to pay Plaintiff all his agreed-upon wages because he did not receive $1.17 per mile for all reasonable empty miles he drove.

109. For example, according to his compensation statements, Plaintiff drove an empty truck from Aurora, Colorado to McPherson, Texas on May 21, 2024. *See* Ex. 2 at 1.

110. The distance between Aurora and McPherson is at least 457 miles but Defendant only paid Plaintiff for driving 441 empty miles. *See id*.

111. By paying Plaintiff for fewer miles than the actual distance he was required to drive, Defendant failed to pay him for all reasonable empty miles he drove.

112. Upon information and belief, Defendant failed to pay other Contracted Operators all their agreed-upon wages because they did not receive $1.17 per mile for all reasonable empty miles they drove.

113. Fourth, Defendant violated the Oklahoma wage laws that govern wage payments upon termination of employment.

114. Upon termination of an employee's employment, Oklahoma employers shall pay the employee's wages in full at the next regular designated payday established for the pay period in which the work was performed. *See* Okla. Stat. 40, § 165.3.

115. The COA states that any compensation due at the time a Contracted Operator's engagement with Defendant ends is subject to charge backs and deductions… up to and including the possibility that a Contracted Operator receives no compensation after the charge backs and deductions are taken. *See* Ex. 1 at 16, ¶ 7.3.4.

116. Defendant violated Okla. Stat. 40, § 165.3 because it failed to pay Plaintiff's outstanding wages described above when his employment ended with the company within the time prescribed therein.

117. Upon information and belief, Defendant also failed to pay other Contracted Operators their outstanding wages described above when their employment ended with the company within the time prescribed in Okla. Stat. 40, § 165.3.

**C. TIL Violations.**

118. Defendant is licensed with the United States Department of Transportation.

119. Defendant is a motor carrier and an authorized carrier under 49 U.S.C. §§ 13901 and 13902, *et seq*.

120. The TIL regulations permit motor carriers to transport property in equipment that they do not own only if the arrangement is subject to a written lease agreement and the agreement meets certain requirements set forth in the regulations. *See generally* 49 C.F.R. § 376, *et seq*.

121. Defendant transports property in equipment leased by individual drivers and/or entities, including Plaintiff.

122. Defendant allegedly leases equipment (a tractor and/or trailer) from Plaintiff through his COA.

123. The COA is subject to the TIL regulations because it concerns the leasing of equipment with which transportation subject to regulation by the Secretary of Transportation would be performed.

124. The COA violates the TIL regulations in numerous ways.

125. First, the COA violates the TIL regulations that govern timing of payments to drivers.

126. Carriers are permitted to condition payment for transportation services rendered on the submission of two categories of documents:

(1) logbooks required by the DOT, and

(2) documents necessary for the carrier to secure payment from the customer.

49 C.F.R. § 376.12(f).

127. Carriers shall not make payment contingent upon submission of any documents that are not listed in 49 C.F.R. § 376.12(f).

128. Carriers shall not make payment contingent upon submission of a bill of lading to which no exceptions have been taken. *See id.*

129. Paragraph 6.1 of the COA states that Defendant "shall settle with [a Contracted Operator] for [s]ervices provided under [the a]greement within 15 calendar days after [a Contracted Operator's] submission, in proper form, of those documents necessary for [Defendant] to secure payment, including, but not limited to, the signed freight bill, proofs of delivery/delivery receipt, or bill of lading, with a "Seal Intact" acknowledgment made by the received/consignee…" *See* Ex. 1 at 13, ¶ 6.1.

130. Paragraph 6.1 violates the TIL regulations because it makes payment contingent upon submission of bills of lading or shipping orders to which no exceptions have been made. *See id*.

131. Paragraph 6.1 violates the TIL regulations because it makes payment contingent upon submission of documents that are not required to secure payment, such as, without limitation, a "signed freight bill." *See id*.

132. Paragraph 6.1 violates the TIL regulations because it makes payment contingent upon submission of an unlimited list of documents. *See id*.

133. Plaintiff was not compensated for at least one load that he delivered and for detention pay owed to him, purportedly because Defendant claimed they did not have the necessary paperwork.

134. Upon information and belief, Defendant did not pay $1.17 per mile to Plaintiff for all reasonable empty miles he drove within 15 days after he submitted all necessary delivery documents to the company.

135. For example, according to his compensation statements, Plaintiff drove an empty truck from Aurora, Colorado to McPherson, Texas on May 21, 2024. *See* Ex. 2 at 1.

136. The distance between Aurora and McPherson is at least 457 miles but Defendant only paid Plaintiff for driving 441 empty miles. *See id*.

137. By paying Plaintiff for fewer miles than the actual distance he was required to drive, Defendant failed to timely pay him for all reasonable empty miles he drove.

138. Upon information and belief, Defendant failed to timely pay other Contracted Operators for all reasonable empty miles because the company also paid them for fewer empty miles than the actual distances they had to drive.

139. Plaintiff also was not paid all compensation owed to him at termination.

140. Plaintiff and other Contracted Operators have suffered harm from Defendant's non-compliance with the TIL regulations that govern timing of payment, including, *inter alia*, withholding, delay, and/or non-payment of drivers' compensation.

141. Second, the COA violates the TIL regulations that govern chargebacks and/or deductions taken from drivers' compensation.

142. Leases between carriers and drivers must clearly specify all items that may be initially paid for by a carrier, but ultimately deducted from a driver's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. *See* 49 C.F.R. § 376.12(h).

143. Carriers must afford drivers copies of documents which are necessary to determine the validity of any chargeback or deduction. *See id*.

144. Defendant took various deductions from Plaintiff's compensation for items that are not specified in the COA as expenses that may be initially paid for by the company, but are ultimately deducted from his compensation at the time of settlement such as, without limitation, "Enforcer Locks," "Fuel," "EBE," "Physical Damage Program," "Basic Maint," "Driver Legal Plan," "Qualcomm Equip/Messaging," "Truck Payment," and/or a truck refurbishment fee when his employment ended. *See generally* Ex. 2.

145. Upon information and belief, Defendant took the same or similar deductions from other Contracted Operators' compensation.

146. The deductions are not specified in the COA for two reasons:

(a) Upon information and belief, they were for expenses that Defendant did not bear, in full or in part; and/or

(b) The COA does not state that Contracted Operators are required to bear those specific expenses.

147. The COA does not provide recitations as to how Defendant computed the amounts of multiple deductions the company took from Plaintiff's compensation, such as, without limitation, "Fuel," "Physical Damage Program," "Occupational Accident In," "Truck Payment," and/or a truck refurbishment fee when his employment ended. *See generally* Ex. 1.

148. Defendant not only failed to disclose the truck refurbishment fee and failed to provide a recitation as to how it is computed, the company also improperly charged Plaintiff for the fee because his truck was in excellent condition when he returned it to the company.

149. Defendant never afforded Plaintiff the opportunity to review copies of documents that were necessary to determine the validity of each deduction the company took from his compensation.

150. Upon information and belief, Defendant never afforded other Contracted Drivers copies of documents that were necessary to determine the validity of each deduction the company took from their compensation.

151. Plaintiff and other Contracted Operators have suffered harm from Defendant's non-compliance with the TIL regulations that govern chargebacks and/or deductions taken from drivers' compensation, including, *inter alia*, loss of compensation.

152. Third, the COA violates the TIL regulations that govern escrow funds.

153. Carriers are required to pay interest on any escrow funds collected from drivers. *See* 49 C.F.R. § 376.12(k)(5).

154. Leases between carriers and drivers must "specify that in no event shall… [an] escrow funds be returned later than 45 days from the date of termination." *See id.* at § 376.12(k)(6).

155. Upon information and belief, Defendant took deductions from Plaintiff's compensation for various items that constitute an escrow fund under 49 C.F.R. § 376.2(l) such as, without limitation, "Physical Damage Program" and a "Group Maintenance Account." *See generally* Ex. 2.

156. Defendant never paid interest to Plaintiff when his money was in escrow.

157. Defendant did not return Plaintiff's escrow money within 45 days of the final date he performed transportation services for the company.

158. Upon information and belief, Defendant took deductions from other Contracted Operators' compensation for various items that constitute an escrow fund under 49 C.F.R. § 376.2(l) such as, without limitation, "Physical Damage Program" and a "Group Maintenance Account."

159. Upon information and belief, Defendant never paid interest to other Contracted Operators when their money was in escrow.

160. Upon information and belief, Defendant did not return other Contracted Operators' escrow money within 45 days of the final date they performed transportation services for the company.

161. Plaintiff and other Contracted Operators have suffered harm from Defendant's non-compliance with the TIL regulations that govern escrow funds, including, *inter alia*, withholding of their escrow money, delay of payment of interest, and/or loss of their escrow money.

162. Fourth, the COA violates the TIL regulations that govern purchases and/or rentals of products, equipment, or services from a carrier.

163. Carriers cannot force drivers to purchase or rent products, equipment, or services from them. *See id*. 49 C.F.R. § 376.12(i).

164. A lease between a carrier and driver "shall specify the terms of any agreement in which the [driver] is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the [driver's] compensation for purchase or rental payments." *Id*.

165. The COA states that Defendant "shall provide for [Contracted Operators'] use" mobile communications and tracking devices. Ex. 1 at 6, ¶ 3.4.4.

166. The COA further states that Contracted Operators "shall bear the cost and expense for the use and operation" of the mobile communications and tracking devices provided to them by Defendant. *Id*.

167. Defendant deducted $25 each week from Plaintiff's compensation for the mobile communications and tracking devices the company forced him to rent from the company. *See generally* Ex. 2.

168. Upon information and belief, Defendant forced other Contracted Operators to rent mobile communications and tracking devices from the company and deducted $25 each week from their compensation for the rental.

169. Defendant took deductions from Plaintiff's compensation for "Truck Payment." *See generally* Ex. 2.

170. The COA does not specify the terms of any contract (e.g. a truck lease) that gave Defendant the right to take deductions from Plaintiff's compensation for a "Truck payment." *See generally* Ex. 1.

171. The COA does not specify the amount(s) that Defendant would deduct from Plaintiff's compensation for a "Truck payment." *See id*.

172. Upon information and belief, Defendant took deductions from other Contracted Operators' compensation for "Truck Payments."

173. Defendant's violations of the TIL regulations that govern purchases and/or rentals of products, equipment, or services from a carrier have caused Plaintiff and other Contracted Operators to suffer damages, including (*inter alia*), without limitation, lost compensation.

174. Fifth, the COA violates the TIL regulations that govern insurance chargebacks.

175. If a carrier will take chargebacks for insurance from a driver's compensation, the amount to be charged-back must be specified in a lease. *See id*. 49 C.F.R. § 376.12(j)(1).

176. During one or more weeks, Defendant took chargebacks from Plaintiff's compensation for various forms of insurance. *See generally* Ex. 2.

177. The COA does not specify the amount(s) of any chargeback that would be taken from Plaintiff's compensation for any form of insurance. *See generally* Ex. 1.

178. Upon information and belief, Defendant took chargebacks from other Contracted Operators' compensation for various forms of insurance in amounts that are not specified in the COA.

179. Defendant's violations of the TIL regulations that govern insurance chargebacks have caused Plaintiff and other Contracted Operators to suffer damages, including (*inter alia*), without limitation, lost compensation.

**D. Breach of Contract.**

180. The COA contains a mediation provision, which states the following:

> "In the event of any disagreement or dispute between [Plaintiff] and [Defendant] regarding the subject matter of [the] COA or the relationship between the parties, before either party can bring a claim in a court of law, such disagreement or dispute shall be brough before an independent mediator… for the parties to engage in good faith resolution."

Ex. 1 at 18, ¶ 15.

181. Consistent with the mediation provision, on September 20, 2024, Plaintiff's counsel sent Defendant a copy of a draft complaint that alleged certain claims against it and a demand letter invoking the COA's mediation provision as to those claims.

182. Thereafter, Defendant breached the COA's mediation provision in two ways.

183. First, Defendant refused to mediate all the claims that Plaintiff alleged against the company in the draft complaint.

184. Specifically, Defendant refused to mediate Plaintiff's claims concerning independent contractor misclassification, Oklahoma wage law violations, and TIL violations related to deductions for the Physical Damage Programs, Truck Payments, Basic Maint, Fuel Surcharges, and Group Maintenance Account.

185. Second, Defendant did not engage in good faith resolution at the mediation.

186. On February 10, 2025, Defendant's counsel executed an Agreement Regarding Mediation ("ARM"), which summarized the scope of the claims the parties agreed to mediate.

187. Pursuant to the ARM, Defendant agreed to mediate Plaintiff's claims on a class basis.

188. On May 29, 2025, the parties mediated with James Gibbs, Esq.

189. At the insistence of Defendant, the mediation was held in person in Oklahoma City, Oklahoma.

190. Despite expressly agreeing to mediate Plaintiff's claims on a class basis, Defendant demanded to engage in individual settlement discussions during the mediation and failed to make a good faith effort to discuss a class settlement.

191. Defendant's breaches of the COA's mediation provision caused Plaintiff and the Contracted Operators in the putative classes to expend unnecessary time and costs preparing for the mediation and participating in it.

192. By refusing to mediate all of Plaintiff's claims against it, and refusing to mediate in good faith, Defendant repudiated the COA's mediation provision, in whole or in part.

## CLASS ALLEGATIONS

### A. Oklahoma Wage Law Classes.

193. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings his Oklahoma wage claims against Defendant on behalf of two classes, as to which Plaintiff seeks certification.

194. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the Oklahoma wage classes as follows:

> *Contracted Operator Class*
>
> All individuals who have executed Contracted Operator Agreements, or similar agreements, with Defendant.
>
> *Unpaid Training Class*
>
> All individuals who have attended an unpaid training with Defendant.

195. The Oklahoma wage law claims of Plaintiff and other similarly situated individuals can be adjudicated on a class basis under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3).

196. Upon information and belief, the proposed classes are too numerous for practicable joinder because each one is comprised of more than 40 individuals who are geographically dispersed throughout the United States.

197. Both classes have questions of law or fact common to all members that predominate over issues that concern only individual members. The common questions include whether Defendant: misclassified Contracted Operators as independent contractors; required individuals to attend training and failed to pay them for their attendance; failed to pay Contracted Operators all the wages they were entitled to receive, failed to pay Contracted Operators' wages on a timely basis, and/or took unlawful deductions from the wages Contracted Operators earned. The predominant questions of law or fact are clear, precise, well-defined, and applicable to Plaintiff, as well as every absent member of the proposed classes.

198. Plaintiff's claims are typical of the claims of the class. Defendant required Plaintiff to attend an unpaid training, misclassified him as an independent contractor, failed to pay him all the wages he was entitled to receive, failed to pay his wages on a timely basis, and took unlawful deductions from his compensation.

199. The damages of the classes can reasonably be calculated from Defendant's business records. Indeed, Defendant operates in a highly regulated industry that requires it to maintain standard operating procedures and uniform policies, procedures, and practices and adhere to laws and regulations governing motor carriers.

200. Plaintiff will fairly and adequately protect and represent the interests of the classes. He has no known conflict of interest with either class. Moreover, Plaintiff has retained counsel who have extensive experience litigating class action wage and hour cases, and specific experience prosecuting wage and hour class actions that involve the trucking industry.

201. Permitting Plaintiff to pursue his Oklahoma wage claims on a class basis is superior to adjudicating them in a piecemeal manner through individual cases. That alternative – numerous identical lawsuits alleging similar or identical causes of action, or joinder of numerous individuals into a single lawsuit – would not serve the interests of judicial economy. The prosecution of separate actions by individual class members would also create a risk of inconsistent or varying adjudications with respect to their claims and potentially yield incompatible standards of conduct for Defendant. Moreover, some class members – particularly current drivers – may be reluctant to bring individual claims for fear of retaliation by Defendant.

202. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by the Oklahoma wage laws to employees.

203. Each proposed Oklahoma wage law class is manageable due to the uniformity of claims among the members and the general amenability of wage and hour cases to both class litigation and the use of representative testimony and representative documentary evidence.

204. The contours of each class can easily be defined by Defendant's business records.

**B. TIL Class.**

205. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings his TIL claims against Defendant on behalf of one class, as to which Plaintiff seeks certification.

206. Pending any modifications necessitated by discovery, Plaintiff preliminarily defines the TIL class as follows:

> All individuals who have executed Contracted Operator Agreements, or a similar agreement, with Defendant at any time since February 27, 2023.

207. The TIL claims of Plaintiff and other similarly situated individuals can be adjudicated on a class basis under Fed. R. Civ. P. 23(a), 23(b)(1), 23(b)(2) and/or 23(b)(3).

208. Upon information and belief, the proposed class is too numerous for practicable joinder because it is comprised of more than 40 individuals who are geographically dispersed throughout the United States.

209. All potential members of this class are similarly situated because Defendant's acts and omissions violated 49 U.S.C. § 14102 and the TIL regulations, and there are questions of law or fact common are common to all members and predominate over issues concerning only individual members. The common questions include whether certain terms of the COA, or similar agreements, complied with the TIL regulations, and whether the terms of the COA, or similar agreements, that violated the TIL regulations caused members to suffer damages. The predominant questions of law or fact are clear, precise, well-defined, and applicable to Plaintiff as well as every absent member of the proposed class because they all signed the same or similar agreement.

210. Plaintiff's claims are typical of the claims of all members of the class. Defendant forced Plaintiff to sign the COA, he worked for Defendant as a Contracted Operator, and Defendant subjected him to the terms in the COA and/or practices and/or policies for Contracted Operators that violate the TIL regulations.

211. Plaintiff will fairly and adequately protect and represent the interests of the class. He has no known conflict of interest with the class. Moreover, Plaintiff has retained counsel who have extensive experience litigating class action wage and hour cases, and specific experience prosecuting TIL class actions that involve the trucking industry.

212. Permitting Plaintiff to pursue his TIL claims on a class basis is superior to adjudicating them in a piecemeal manner through individual cases for the same reasons it is superior to adjudicate his Oklahoma wage law claims on a class basis.

213. Public policy supports the broad remedial purposes of class actions in general and specifically to vindicate the rights afforded by 49 U.S.C. § 14102 and the TIL regulations to consumers, whose individual claims may be too small to warrant the expense of litigation.

214. The proposed class is manageable due to the uniformity of claims among the members and the general amenability of TIL claims to both class litigation and the use of representative testimony and representative documentary evidence.

215. The contours of the class can easily be defined by Defendant's business records.

**COUNT I**
**Violation of Oklahoma Wage Laws**

216. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

217. Plaintiff asserts this claim on behalf of himself and the other individuals in the Contracted Operators Class and the Unpaid Training Class.

218. Defendant violated the Oklahoma wage laws by failing to timely pay and/or pay Plaintiff and the other individuals in the Rule 23 Contracted Operators Class and/or the Unpaid Training Class all the wages they earned and/or were entitled to receive.

219. Plaintiff and the individuals in the Rule 23 Contracted Operators Class and/or the Unpaid Training Class seek recovery of all unpaid wages, reimbursement for any/all prohibited deductions, liquidated damages, civil penalties as appropriate, appropriate ancillary relief, injunctive relief, interest, attorneys' fees, costs, and all other relief to which they are entitled.

**COUNT II**
**Violation of the TIL Regulations**

220. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

221. Plaintiff asserts this claim on behalf of himself and the other individuals in the TIL Class.

222. As alleged, the terms in the COA, and/or similar agreements, and/or Defendant's practices and/or policies for Contracted Operators violate the TIL regulations.

223. As a result of Defendant's violations of the TIL regulations, Plaintiff is entitled to declaratory judgment that the COA violates 49 C.F.R. § 376.12.

224. As a result of Defendant's violations of the TIL regulations, Plaintiff is entitled to enjoin Defendant from attempting to enforce the COA, and/or similar agreements.

225. As a direct and proximate result of Defendant's substantial and material failure to comply with the TIL regulations, the company has violated the rights of Plaintiff and the putative class members and caused them to suffer damages in an amount to be determined at trial.

226. Plaintiff and the individuals in the Rule 23 TIL Class seek reimbursement for any/all unlawful deductions taken from drivers' compensation, reimbursement for any/all amounts improperly retained, appropriate ancillary relief, injunctive relief, interest, attorneys' fees, costs, and all other relief to which they are entitled.

**COUNT III**
**Breach of Contract**

227. Plaintiff re-alleges and incorporates by reference all previous paragraphs of this Complaint as if fully rewritten herein.

228. As alleged, Defendant breached the mediation provision in the COA because it refused to mediate all of Plaintiff's claims against it and refused to mediate in good faith.

229. As a result of its breaches of the COA's mediation provision, Defendant repudiated the provision and Plaintiff is excused from any duty to perform in it.

230. Plaintiff seeks damages in the form of attorneys' fees and costs expended on the mediation, ancillary relief, injunctive relief, and all other relief to which he is entitled.

## JURY DEMAND

231. Plaintiff hereby demands a jury on all claims so triable.

## PRAYER FOR RELIEF

232. Plaintiff respectfully requests that the Court grant the following relief:

a. Certification of the Contracted Operators Class as a class under Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3);

b. Certification of the Unpaid Training Class as a class under Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3);

c. Certification of the TIL Class as a class under Fed. R. Civ. P. 23(b)(1), 23(b)(2) and 23(b)(3);

d. Designation of Plaintiff as representative for the certified classes;

e. Designation of undersigned counsel as counsel for the certified classes;

f. An order that Plaintiff and members of the certified classes were Defendant's employees under Oklahoma wage laws;

g. An order enjoining Defendant from violating Oklahoma wage laws;

h. All unpaid wages;

i. Restitution for all deductions taken from the wages of Plaintiff and the other members of the Rule 23 Contracted Operators Class;

j. An award to Plaintiff and the other individuals in the classes of damages, liquidated damages, and penalties;

k. Interest;

l. Attorneys' fees and costs;

m. Declaratory judgment that the COA (and/or similar agreements) are unlawful and violate the TIL regulations.

n. Judgment against Defendant for all damages that Plaintiff and other class members sustained as a result of the company's violations of the TIL regulations, including but not limited to restitution for all improper or excessive charges, chargebacks, deductions, or withholdings; all amounts owed in interest on escrowed funds; all escrowed funds improperly withheld at the termination of drivers' relationship with Defendant; and all other direct and proximate damages.

o. Injunctive relief requiring Defendant to comply fully with the TIL regulations.

p. Declaratory judgment that Defendant breached the mediation provision in the COA, and repudiated it.

q. All damages caused by Defendant's breaches of the mediation provision in the COA.

r. Injunctive relief preventing Defendant from enforcing the mediation provision in the COA.

s. Any other relief that the Court deems just and proper.

Respectfully submitted,

CORY JONES, on behalf of himself
and all others similarly situated,

By his attorneys,

*/s/ Hillary Schwab*

Hillary Schwab

Rachel Lawrence Mor, Esq. Ok. Bar No. 11400
Rachel Lawrence Mor, P.C.
3555 N.W. 58th St., Suite 1000
Oklahoma City, Oklahoma 73112
Tel: 405-694-5952
rmor@thelawgroupokc.com

Hillary Schwab, Esq., W.D. OK. 22-23
Brook S. Lane, Esq.
*Pro hac vice* application forthcoming
FAIR WORK, P.C.
192 South Street, Suite 450
Boston, MA 02111
Tel: (617) 607-3260
Fax: (617) 488-2261
hillary@fairworklaw.com
brook@fairworklaw.com

Date: February 10, 2026