**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| COREY JONES, for himself and all other similarly situated, | ) | |
| *Plaintiff*, | ) | |
| v. | ) | Case No. 5:25-cv-00583 |
| WESTERN FLYER EXPRESS, LLC, | ) | |
| *Defendant.* | ) | |

**DEFENDANT WESTERN FLYER EXPRESS'S**
**REPLY IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

Submitted by:

Christopher M. Scaperlanda, OBA #31703
Tyler E. Ames, OBA #34944
McAfee & Taft A Professional Corporation
Eighth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102-7103
Telephone: (405) 552-2356
Facsimile: (405) 228-7356
chris.scaperlanda@mcafeetaft.com
tyler.ames@mcafeetaft.com

Pursuant to LCvR7.1(h), Defendant Western Flyer Express, LLC ("WFX") submits the following Reply in further support of its Motion to Dismiss [Doc. No. 30].

## I. The Court should reject Plaintiff's attempt to use the federal pleading standard as both a sword and shield.

A thread woven through Plaintiff's Response [Doc. No. 33] is the idea that, "if I plead it, the Court must accept it as true." *See* Pl.'s Resp. at 1. Although it is true that the Court, at the motion-to-dismiss stage, must accept well-pleaded, plausible allegations as true, the Court is not required to merely accept Plaintiff's word. For example, the Court should not accept legal conclusions as true, nor should it accept as true mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (instructing that district courts shall not "accept as true" legal conclusions couched as factual allegations);.

Particularly relevant here, the Court's hands are not tied behind its back when it comes to allegations that are directly contrary to the express language of a contract (or similar document). *See Garcia v. Knee*, No. 1:15–cv–00258 RB/WPL, 2015 WL 4664655, at *4 (D.N.M. July 13, 2015) ("Secondly, Plaintiffs allege that Defendant misrepresented that they 'would not be evicted only if there was a buyer for the property' [sic]. This assertion is refuted by the plain language of the Lease and the Addendum to Lease."). "In a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss. This is true even if contract documents not attached to the complaint refute a breach-of-contract claim, or a claim that defendant breached a statutory or common law duty." *Zean v. Fairview Health Serv's*, 858 F.3d 520, 526 (8th Cir. 2017) (cleaned up).

As WFX pointed out in its Motion, numerous of Plaintiff's allegations are refuted

by the contract he attached and relies on for his claims. *See* WFX Mot. to Dismiss at 8.[1] In his response, Plaintiff repeatedly doubles down. Perhaps the most blatant example is in response to WFX's argument—supported by the COA and settlement statements—that "WFX does not utilize escrow accounts as a general practice, and WFX did not utilize escrow accounts with Plaintiff specifically." *Id.* at 23. Rather than admitting the facts (as evidenced by the COA), Plaintiff claims his "allegations must be taken as true for purposes of [WFX's] motion to dismiss, so [WFX] cannot successfully move to dismiss his escrow fund claims simply because it disputes the relevant allegations." Pl.'s Resp. at 24.

Plaintiff is wrong. The Court ***should*** dismiss Plaintiff's claims when the purported facts underlying the claims are contrary to the express terms of the COA and Plaintiff's settlement statements. A hypothetical underscores the absurdity of Plaintiff's position: A sues B for breach of contract, alleging the contract entitles A to $1 million. In a motion to dismiss, B attaches the underlying contract, which conclusively shows A was entitled to only $500,000. In his response to the motion to dismiss, A argues, "well, I pled that the contract entitles me to $1 million, so the court has to accept that as true." Accepting A's claim as true is unsupportable where documents conclusively refute the allegation. This Court should not give Plaintiff the benefit of the doubt where no doubt exists.

## II. Plaintiff is not—cannot be—a misclassified employee under Oklahoma law.

Plaintiff agrees that the same definition of "employee," and the same exclusions from that definition, apply to any claim for misclassification brought under the OAC or

[1] WFX cites to the Court's CM-ECF pagination at the top of each page.

PLA. *See* Pl.'s Resp. at 27-28; Mot. to Dismiss at 25–30. In short, the OAC mandates that "employee" shall not include "a person, commonly referred to as an owner-operator, who owns or leases a truck-tractor or truck for hire, if the owner-operator actually operates the truck-tractor or truck and if the person contracting with the owner-operator is not the lessor of the truck-tractor or truck." 85A O.S. § 2(18)(b)(8). And because the OAC "establish[es] the definitions" for the PLA, the same definition applies. *See* OAC 380:30-1-1; *see also* Mot. to Dismiss at 29–30.

But Plaintiff fails to meaningfully engage with WFX's statute- and regulation-based arguments. First, Plaintiff contends the issue cannot be resolved on a motion to dismiss. He is wrong. Where statutes and regulations provide controlling definitions, courts routinely decide, at the outset and as a matter of law, whether those definitions are met. WFX respectfully asks the Court to do so here.

Second, while Plaintiff acknowledges the OAC's definition expressly excludes owner-operators, he then attempts to avoid its application by manufacturing a contorted definition of the phrase "for hire." Pl.'s Resp. at 27–28. Plaintiff claims he was not a "for hire" owner-operator during his work with WFX. Again, he is wrong. "For hire" refers to the transportation of property belonging to others for compensation. In the transportation context, the term describes the nature of the service performed, not the regulatory status of the actor performing it. As an industry phrase having been long in use, it's not easy to find a foundational definition of "for hire." The FMCSRs, albeit within insurance regulations, define "for-hire carriage" as "the business of transporting, for compensation, the goods or property of another." 49 C.F.R. § 387.5. As one would expect, the definition focuses on

movement of goods for compensation, not the authority of the party performing the work.

Federal statutory structure confirms the same point. Under 49 U.S.C. § 13102, a motor carrier provides transportation for compensation, while 49 C.F.R. Part 376 governs the leasing relationships through which that compensated transportation is carried out with equipment the motor carrier doesn't own and drivers the motor carrier doesn't employ. The structure of Part 376 necessarily contemplates that owner-operators, who do not hold operating authority, are nonetheless engaged in for-hire transportation as participants in the compensated movement of goods under the carrier's authority.

The COA confirms this where it provides Plaintiff "will provide commercial motor vehicle equipment under lease, and driving services," and he is "engaged in the business of providing commercial motor vehicle equipment with a driver, to motor carriers for lease," for compensation. COA [Doc. No. 29-1] at 2, 22. Plaintiff was thus doing exactly what the governing definitions describe: providing equipment and driving services, for the transportation of property, for compensation. That is for-hire transportation.

Oklahoma law aligns with this framework. 47 Okla. Stat. § 230.29, which substantially tracks the core contractual disclosure and allocation requirements of 49 C.F.R. § 376.12, regulates the relationship between authorized carriers and owners of equipment used in transportation. Its definitions confirm that the statute is concerned with compensated transportation activity, not regulatory status. *Id.* at § 230.29(1-6). A "lease" is defined as an arrangement by which the owner grants the use of equipment "for . . . transportation . . . in exchange for compensation," and the roles of owner, lessor, and lessee are defined by control and contractual use of equipment, not by possession of operating

authority. Together, these provisions frame the transaction around paid transportation services using leased equipment, reinforcing that "for hire" refers to transportation performed for compensation.

Plaintiff's contrary interpretation is not just incorrect; its acceptance would collapse the regulatory framework. If "for hire" meant only entities holding motor carrier authority, then 49 C.F.R. Part 376 and its Oklahoma counterpart would have no field of operation. Those provisions exist precisely to govern the relationship between authorized carriers and non-authorized equipment providers. Interpreting "for hire" to require separate operating authority at the contractor level would render those regulations inapplicable to the very relationships they were designed to regulate.

Plaintiff is not outside the exclusion; he is the prime example of it. He owned or leased a truck, brought that truck to WFX, provided driving services, and did so for compensation in the transportation of property of others. WFX was not the lessor of the equipment. That is the definition of an owner-operator operating for hire under Oklahoma law and federal regulations. Plaintiff was for hire. WFX hired him. Plaintiff cannot avoid the exclusion by applying a nonsensical definition to a well-established industry term.

## III. Plaintiff's TIL claims fail.

### A. The COA's notice provisions are enforceable.

Plaintiff first argues that the COA's notice provisions are unenforceable "because [WFX] violated 49 C.F.R. § 376.12(g) and (h)." Pl.'s Resp. at 9. Plaintiff's argument appears to be that, because WFX did not disclose every minute detail of every line in the settlement statements, and because WFX did not physically hand him a stack of documents

every week identifying how WFX calculated every single deduction, WFX violated 49 C.F.R. § 376.12(h). Plaintiff is wrong. The regulations do not require that level of detail or production. Further, Plaintiff fails to meaningfully distinguish numerous on-point cases which support WFX's positions.

As explained in WFX's Motion to Dismiss, § 376.12(h) requires WFX to do two things: (1) clearly specify all chargeback items in the lease, together with a recitation as to how each item is computed; and (2) afford the lessor the chance to view copies of documents which are necessary to determine the validity of each chargeback. *See* WFX Mot. to Dismiss at 13. WFX's Motion to Dismiss, and as further explained *infra*, reveal how each chargeback was properly disclosed in the COA and its related documentation. It is also undisputed that Plaintiff—along with every other driver he purports to represent—had ample opportunity to view copies of documents necessary to determine the validity of each chargeback. Despite Plaintiff's attempt to impose a greater burden on WFX, opportunity is all the law requires:

> Because we conclude that the disclosure requirements do not mandate a complete itemization of Swift's profits and fees (except where required to calculate variable-rate fees), we similarly hold that the documentation provision does not require such an itemization. Indeed, the district court concluded that the weekly settlement statements satisfy the documentation requirement to the extent that they 'provide sufficient information to allow [owner-operators] to determine whether or not the charge-back rates previously disclosed to them were being used to determine their charge-backs.' This is all the regulation requires to allow lessors to ensure that they only pay for what they have agreed to pay in advance.

*OOIDA v. Swift*, 632 F.3d 1111, 1120 (9th Cir. 2011) (internal citation omitted); *see also* *OOIDA v. Landstar*, 622 F.3d 1307, 1320 (11th Cir. 2010) (holding that § 376.12(h)

requires the motor carrier to "disclose the [chargeback] in the lease and follow up with settlement statements that explain the final amount charged back").[2]

Plaintiff next argues that the COA's notice and waiver provisions are unconscionable. More specifically, Plaintiff contends the notice provisions "make it impractical for drivers to pursue TIL claims" because the COA "requires drivers to mediate claims against [WFX] before they can pursue them in court, and the mediations must be held in Oklahoma unless [WFX] agrees otherwise." Pl.'s Resp. at 14.

"The question of unconscionability is one of law for the Court to decide." *Stoll v. Chong Lor Xiong*, 241 P.3d 301, 305 (Okla. Civ. App. 2010) (quoting *Phillips Machinery Company v. LeBlond, Inc.,* 494 F. Supp. 318, 322 (N.D. Okla. 1980)). An unconscionable contract is "one which no person in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept on the other." *Barnes v. Helfenbein*, 548 P.2d 1014, 1020 (Okla. 1976). "Unconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties, together with contractual terms which are unreasonably favorable to the other party." *Id.*

Plaintiff's unconscionability argument is a non sequitur. The pre-suit mediation requirement has nothing to do with the notice and waiver provision. If Plaintiff had a problem with a settlement statement, his only obligation was to bring it to someone's

[2] Plaintiff's attempt to distinguish *Swift* and *Landstar* is unavailing and ignores the practical realities of the trucking industry. If Plaintiff had any question about any given chargeback item, he had multiple ways to inquire with WFX whether the chargeback was valid. But he never did, because he knew what each chargeback was for and why each chargeback was necessary. He did not dispute them until the filing of this lawsuit.

attention, in writing, within a month. He didn't have to travel to Oklahoma to do it, and he certainly didn't have to mediate it during that month. Under the COA, if Plaintiff had timely disputed the chargebacks, and rejected whatever response was made, ***then*** he could have requested mediation. The notion that a mandatory pre-suit mediation provision (which, as the Court is likely aware, are common and commonly enforced) could somehow render a different, unrelated term unconscionable is nonsensical and patently inapplicable given the plain reading of the COA. This is especially true in this case, where the Court previously enforced the COA's pre-suit mediation requirement, and Plaintiff made no mention of the provision being unconscionable. *See* 9/17/2025 Order [Doc. No. 11] at 7.

**B. The individual TIL claims fail as a matter of law and fact.**

**1. Contingent payments and escrow**

This category of purported TIL violations demonstrates what WFX explained at the outset of this Reply: Plaintiff attempts to use the federal pleading standard as a sword and shield by pleading allegations clearly refuted by his own documents and then claiming that the Court—despite what the documents actually say—must accept the allegations as true. Again, although the Court must accept plausible, non-conclusory allegations as true, it is not required to shield its eyes and treat everything Plaintiff says as unmistakable truth.

Regarding contingent payments, Plaintiff says the COA violates 49 C.F.R. § 376.12(f) because, according to Plaintiff, requiring bills of lading as a condition for payment isn't allowed. This is wrong. Section 376.12(f) permits WFX's conditioning payment on "documents necessary for the authorized carrier to secure payment from the shipper." Regarding bills of lading, § 376.12(f) only directs that "Payment to the lessor

shall not be made contingent upon submission of a bill of lading **to which no exceptions have been taken**." In short, bills of lading, as a document "necessary…to secure payment from the shipper" can be required, but bills of lading to which no exceptions have been taken cannot.[3] The COA requires a bill of lading, or other documents necessary to get paid, but it does not require a bill of lading that is exception-free. *See* COA at 14, § 6.1. The COA is consistent with the regulation. Beyond that, the Complaint is absent of any allegation that WFX ever withheld payment from Plaintiff for failing to provide a bill of lading and/or a bill of lading to which no exception has been taken.

As for escrow accounts, and as detailed in WFX's Motion to Dismiss, there is not a single mention of the word "escrow" in the COA, and the settlement statements Plaintiff attaches to his Complaint are blank in the section where charges for an escrow account would be listed. *See* Mot. to Dismiss at 22-23. Plaintiff says the Court should ignore the documents because his "allegations must be taken as true for purposes of [WFX's] motion to dismiss, so [WFX] cannot successfully move to dismiss his escrow fund claims simply because it disputes the relevant allegations." Pl.'s Resp. at 24. But the issue is not that WFX disputes the allegations, it is that the very documents upon which Plaintiff has sued conclusively disprove his allegations. Under these circumstances, it is appropriate for the Court to disregard Plaintiff's allegations which are plainly refuted by governing

[3] This makes sense practically and strikes a careful balance. A bill of lading confirms delivery, and it is reasonable to require confirmation of delivery before payment is made to a driver. On the other hand, exceptions to a bill of lading can result in a lengthy dispute between the motor carrier and the recipient and may have nothing to do with what a driver has done or not done.

documents, *see Garcia*, 2015 WL 4664655, at *4 and *Zean*, 858 F.3d at 526, and dismissing these demonstrably false claims.

### 2. Mobile communications and truck refurbishment

These categories of purported TIL violations underscore Plaintiff's lack of knowledge regarding how the trucking industry functions from day-to-day, or his refusal to plead whether he experienced an actual TIL violation. For example, Plaintiff argues the Commercial Motor Vehicle Safety Act "required [WFX] to do nothing more than install an [ELD] in [Plaintiff's] truck and ensure that he used it." Pl.'s Resp. at 19. But what Plaintiff fails to understand is that WFX must have an ELD service ***to ensure that Plaintiff used the ELD***. Without the service, the ELD is meaningless, and WFX has no way to monitor Plaintiff's hours of service, which it is required to do. The ELD mandate matters.

As for truck refurbishment, Plaintiff acknowledges his vehicle lease contract with RWTLCS but argues that WFX violated the TIL regulations by failing to "'specify the terms' of the purported contract between [Plaintiff] and that third party in the COA before taking the deduction." *Id.* at 22-23. Again, this ignores the realities of the industry. WFX incurs numerous charges that are variable, making it impossible to detail every amount down to the penny. Truck refurbishment/reconditioning is a prime example. WFX doesn't know what kind of damage any independent contractor will cause to the asset that is owned/leased by another entity. Nor does WFX know what the cost of that work will be from day to day, given market conditions. WFX can only say that it is a charge Plaintiff will owe, and when it is charged, Plaintiff can request a review of the documents. That is precisely what happened here.

Respectfully submitted,

/s/ Christopher M. Scaperlanda

Christopher M. Scaperlanda, OBA #31703
Tyler E. Ames, OBA #34944
McAfee & Taft A Professional Corporation
Eighth Floor, Two Leadership Square
211 North Robinson Avenue
Oklahoma City, OK 73102-7103
Telephone: (405) 552-2356
Facsimile: (405) 228-7356
chris.scaperlanda@mcafeetaft.com
tyler.ames@mcafeetaft.com

***Attorneys for Defendant WFX***