**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **CORY JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-25-583-R** |
| | ) | |
| **WESTERN FLYER EXPRESS, LLC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Before the Court is Defendant Western Flyer Express's Motion to Dismiss [Doc. No. 30] Plaintiff Cory Jones's Amended Complaint [Doc. No. 29]. Mr. Jones responded [Doc. No. 33] and Western Flyer replied [Doc. No. 36]. The Court GRANTS the motion in part and DENIES it in part.

**BACKGROUND**

This is an employment and contract dispute concerning federal trucking regulations. Cory Jones drove a truck for Western Flyer Express, either as its employee or as an independent contractor. Mr. Jones alleges that Western Flyer violated federal trucking regulations, called the Truth in Leasing (TIL) regulations, when it, among other things, unlawfully charged him for at least 8 categories of items. Doc. No. 29 at 15 ¶ 118–22 ¶ 179. Mr. Jones also alleges that Western Flyer violated Oklahoma state wage laws, applicable only to "employees." Doc. No. 29 at 10 ¶ 80–15 ¶ 117. Finally, Mr. Jones alleges that Western Flyer breached the parties' Contract [Doc. No. 29-1] by refusing to mediate some

of Mr. Jones's claims in good faith, while refusing to mediate other claims at all. Doc. No. 29 at 30 ¶ 228.

**LEGAL STANDARD**

A plaintiff's complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED R. CIV. P. 8(a)(2). To show entitlement to relief, and survive a motion to dismiss, the plaintiff must show his claims' facial plausibility—something greater than mere possibility and less than conclusive proof. *GreenLatinos v. Suncor Energy (U.S.A.) INC.*, 184 F.4th 1171, 1179 (10th Cir. 2026); *McNellis v. Douglas Cnty Sch. Dist.*, 116 F.4th 1122, 1132 n.6 (10th Cir. 2024).[1] At this stage, the Court considers only the complaint,[2] assumes that the plaintiff's well pleaded factual allegations are true, and "draw[s] all reasonable inferences" in his favor. *Brown v. City of Tulsa*, 124 F. 4th 1251, 1263 (10th Cir. 2025).

[1] Mr. Jones cites the wrong pleading standard, Doc. 33 at 7, arguing that Court should only dismiss if "it appears beyond doubt that the [Mr. Jones] can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957). That is incorrect because *Iqbal* and "*Twombly* retired the *Conley* no-set-of-facts test . . ." nearly 20 years ago. *Iqbal*, 556 U.S. at 670.

[2] As the Court has previously noted, [Doc. 11 at 2–3]; [Doc. 28 at 3–4 n.1], it may properly consider the two exhibits Mr. Jones's attached to his complaint—the Contract and various "settlement" memoranda that depicts the allegedly violative fees—because both documents are "central to [Mr. Jones's] claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

## DISCUSSION

### I. Mr. Jones plausibly alleges that he needn't comply with the Contract's notice/waiver provisions.

The parties first disagree about whether the Court can even consider the sufficiency of Mr. Jones's TIL claims. This is because the Contract contains two notice/waiver provisions—which require Mr. Jones to first raise any compensation issues by notifying Western Flyer within 15 or 30 days of any deficiencies with his pay. Doc. No. 29-1 at 15 ¶ 6.6; 23 ¶ 3. Mr. Jones does not allege that he raised any of his TIL claims with Western Flyer within the 15- or 30-day periods required by the Contract. *See* Doc. No 33. So Western Flyer argues that he can't bring them at all. Doc. No 30 at 8–14.

But as Western Flyer previously argued, Mr. Jones can either (1) plead compliance with the notice/waiver provisions or (2) "admit[] his failure to comply with [them], and state[] the reasons he believes the requirement[s] unenforceable or inapplicable." Doc. 28 at 6–7. At this stage, the Court is satisfied that the notice/waiver provisions don't apply to Mr. Jones—or at least don't bar his claim—because he adequately alleges he couldn't comply with them.[3] To comply with the provisions, and dispute the charges, Mr. Jones would need to know how Western Flyer calculated its fees, information with which Western Flyer is required to provide him. 49 C.F.R. § 376.12(h). So—Mr. Jones argues—because Western Flyer failed to provide him with the necessary documents, he couldn't, and thus need not have, complied with the notice/waiver provisions.

[3] The Court more fully discusses each alleged TIL violation below.

The Court will fully consider Mr. Jones's TIL claims. Key to understanding why the Court can fully consider the sufficiency of Mr. Jones's TIL allegations at the motion-to-dismiss stage requires a short description of the TIL regulations at issue. Certain federal trucking regulations govern "chargebacks," "items" that a carrier like Western Flyer can deduct from the "settlements" they pay to drivers like Mr. Jones. *Id.* Section 376.12(h) requires two things:

- That the Contract "clearly specify all items that may be initially paid for by the authorized carrier [Western Flyer], but ultimately deducted from the lessor's [Mr. Jones] compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed" and
- That "[t]he lessor [Mr. Jones] shall be afforded copies of those documents which are necessary to determine the validity of the charge."

§ 376.12(h).

Western Flyer argues that Mr. Jones failed to allege that it "did not comply with the first half of § 376.12(h)" Doc. No. 30 at 13. But Mr. Jones did just that when he alleged:

> [Western Flyer] took various deductions from [Mr. Jones's] compensation for items that are not specified in the [Contract] as expenses that may be initially paid for by the company, but are ultimately deducted from his compensation . . . such as . . . "Enforcer Locks," "Fuel," "EBE," "Physical Damage Program," "Basic Maint," "Driver Legal Plan," Qualcomm Equip/Messaging," "Truck Payment," and/or a truck refurbishment fee when his employment ended.

Doc. No. 29 at 18 ¶ 144. In fact, Western Flyer concedes as much with the "EBE" charge, which it says was "not specifically listed in the chargebacks list" "due to an oversight." Doc. No 30 at 20.[4]

---

[4] Western Flyer does argue, however, that its oversight is irrelevant here because—according to documents it claims to have in its possession but has not submitted to the

Western Flyer also argues that "[it] unquestionably complied with the second half [of § 376.12(h)]. Doc. No. 30 at 13. Mr. Jones alleges that:

- The Contract "does not provide recitations as to how [Western Flyer] computed the amounts of multiple deductions the company took from [his] compensation, such as, without limitation, "Fuel," "Physical Damage Program," Occupational Accident In," "Truck Payment," and/or a truck refurbishment fee when his employment ended," Doc. No. 29 at 19 ¶ 147 and

- Western Flyer "never afforded [him] the opportunity to review copies of documents that were necessary to determine the validity of each deduction the company took from his compensation," Doc. No. 29 at 19 ¶ 149.

Simply put: the problem, as Mr. Jones sees it, is that Western Flyer failed sufficiently to explain the charges as required by § 376.12(h).

Western Flyer's response to this point is that according to a select few courts that have addressed this issue (neither in the Tenth Circuit), all that § 376.12(h) requires of a carrier like Western Flyer is to (1) disclose the chargeback and (2) list the charge in the settlement. Doc. No. 30 at 13. This is so, it argues, because the chargebacks with which Mr. Jones takes issue are calculated as flat, as opposed to variable rate, fees. Doc. No. 30 at 13–14; *see Owner-Operator Independent Drivers Ass'n, Inc. v. Landstar Sys. Inc.*, 622 F. 3d 1307, 1320 (11th Cir. 2010) (concluding that, for flat fees, "[§] 376.12(h) does not require [the carrier] to do more than disclose the flat-fee in the lease and follow up with settlement statements that explain the final amount charged back").

---

Court—Mr. Jones signed an "agreement[] governing EBE use," which means that he "cannot reasonably claim to have been caught unaware of the EBE service." Doc. No. 30 at 20–21. It's true that this issue turns on what Mr. Jones knew. But Western Flyer hasn't provided that document to the Court, and even if it did, it's not clear the Court could consider it. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

But even assuming Western Flyer is correct—that flat-fee chargebacks don't require any documentation beyond the Contract and the settlement—that doesn't mean that the Court can assume that the chargebacks here are, indeed, flat fees. Because Mr. Jones alleges that he did not receive proper documentation, Doc. No. 29 at 19 ¶ 147–49, and nothing from the chargebacks in the various settlements Mr. Jones provides makes it abundantly clear that the chargebacks are flat fees, the Court must conclude at this stage that they aren't. Therefore, the Court can fully address the sufficiency of Mr. Jones's TIL claims.

## II. The Court GRANTS in part and DENIES in part the motion to dismiss Mr. Jones's federal regulatory claims.

Mr. Jones alleges in his first count that Western Flyer violated federal trucking regulations. Doc. No. 29 at 16 ¶ 125–22 ¶ 179. These are known as the Truth in Leasing or "TIL" regulations, and their general purpose is to "protect independent truckers from motor carriers' abusive leasing practices." *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1211 10th Cir. 2016).

### A. Contingent Payments

TIL regulations require Western Flyer to include a provision like this in its lease agreement: "[P]ayment to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier." 49 C.F.R. § 376.12(f). Moreover, the regulations limit the kinds of documents that Western Flyer can demand of Mr. Jones before paying him; in particular: "Payment to the lessor shall not be made contingent upon submission of a bill of lading to which no exceptions have been taken." *Id.* Mr. Jones says Western Flyer violated this provision because the

Contract permits Western Flyer to demand, if necessary, a "bill of lading" before paying him. Doc. No. 29 at 16 ¶ 129–17 ¶ 130; Doc. No. 29-1 at 14 ¶ 6.1.

This allegation is implausible. The Contract does not require Mr. Jones to supply Western Flyer with "an unlimited list of documents." Doc. No. 29 at 17 ¶ 132. By its terms, the Contract simply outlines the kinds of documents that might be necessary "to secure payment from the shipper." § 376.12(f); Doc. No. 29-1 at 14 ¶ 6.1. As to the "bill of lading," the regulation does not facially prohibit Western Flyer from making payments contingent upon providing a bill of lading, just "bill[s] of lading to which no exceptions have been taken." § 376.12(f). All the Contract seems to do is suggest that a bill of lading might be a necessary document; the regulation ensures Western Flyer can only do that with certain kinds of bills of lading. *Id.*; Doc. No. 29-1 at 14 ¶ 6.1. And in any event, Mr. Jones doesn't allege that Western Flyer ever withheld payment on a bill of lading. *See* Doc. No. 29 at 16 ¶ 125–17 ¶ 133.

Although courts have upheld "meager" allegations like this at the motion-to-dismiss stage, this allegation fails because even if the Court assumes its truth, Mr. Jones wouldn't be entitled to relief; the Court need only read the Contract's plain language to see that it does not necessarily violate the TIL regulation at issue. *Cf. Wills v. Premier Trading and Transp., LLC*, No. CIV-21-246-G, 2022 WL 4775943 at *2, *6 (W.D. Okla. Sept. 30, 2022) (upholding a claim based on the allegation that "[trucking company] failed to provide the necessary documentation to determine the validity of any charge applied as a charge-back") (citation modified). The Court DISMISSES the Contingent Payments claim.

**B. Fuel Charges**

TIL regulations also require "[t]he amount to be paid by the . . . carrier for . . . driver's services [to] be clearly stated on the face of the lease . . . " § 376.12(d). Mr. Jones says that Western Flyer violated § 376.12(d) because:

- Western Flyer didn't actually bear the full cost of the fuel that it charged back to him; and
- The Contract doesn't clearly specify that Mr. Jones was to bear fuel costs.

Doc. No. 29 at 18 ¶ 144–19 ¶ 146(b).

Mr. Jones's first argument fails. He says that Western Flyer charged back more than the fuel actually cost, in violation of the Contract; as a result, he argues, Western Flyer's deductions exceeding the actual cost rendered the total cost "effectively undisclosed." Doc. No. 33 at 18–19; § 376.12(d).

For support, Mr. Jones cites *Owner-Operator Independent Drivers Ass'n, Inc. v. Landstar Sys. Inc*, 622 F.3d 1307, 1317 (11th Cir. 2010); Doc. No. 33 at 19. But the problem in *Landstar* was not that a carrier had charged a driver more than they should have for a specific charge; it was that using the term "third party fees was insufficient . . . [under § 376.12(d)] because it d[id] not give adequate notice of any specific charges." *Landstar*, 622 F.3d at 1317 (citation modified). Here, Mr. Jones does not claim that the Contract failed to give him adequate notice that he was responsible for fuel, but that Western Flyer charged him for more fuel than he used or it paid for. Doc. No. 29 at 18 ¶ 146(a). As both parties acknowledge, the regulations here require drivers to have "fair notice of any fees they will be required to pay." *Owner-Operator Independent Drivers Ass'n, Inc. v. Swift Transp. Co.*

*Inc.*, 632 F.3d 1111, 1118 (9th Cir. 2011). Even accepting Mr. Jones's allegations as true, he got fair notice of the fuel charges, so his first argument fails.

Mr. Jones's second argument also fails. TIL regulations require Western Flyer to "clearly specify" in the lease "all items that may be initially paid for by the authorized carrier, but ultimately deducted from [Mr. Jones's] compensation at the time of payment or settlement." § 376.12(h)[5]. But the Contract *does* clearly specify that Mr. Jones shall ultimately bear the cost of "all necessary . . . fuel," and that Western Flyer can charge back anything for which it is Mr. Jones's responsibility to pay. Doc. No. 29-1 at 8 ¶ 3.5.1; 15 ¶¶ 6.5, 6.7. Moreover, the TIL regulations suggest that the parties may allocate fuel costs entirely to drivers like Mr. Jones; in fact, they require the lease to "clearly specify the responsibility of each party with respect to the cost of fuel." § 376.12(e). The Contract Mr. Jones attached directly refutes his second argument, so it fails. *Jackson v. Alexander*, 465 F.2d 1389, 1390 (10th Cir. 1972) ("[The Court] need not accept as true mere legal conclusions nor allegations of fact that are at variance with the express terms of an instrument attached to the complaint as an exhibit and made a part thereof."). The Court DISMISSES the Fuel Charges claim.

**C. Mobile Communications**

Mr. Jones says that Western Flyer required him to purchase communications equipment services that violate 49 C.F.R. § 376.12(i). Doc. No. 29 at 21 ¶¶ 162–68. That regulation prohibits carriers from requiring drivers to "purchase or rent any products,

[5] As noted above, these are called "chargebacks." *See* § 376.12(h).

equipment, or services . . . as a condition of entering into the lease arrangement." § 376.12(i). Western Flyer agrees that it required Mr. Jones to pay for his use of an "Electronic Logging Device[]" but says that § 376.12(i) doesn't apply to those devices. Doc. No. 30 at 11–12.

Binding case law forecloses Western Flyer's argument. *Fox*, 839 F.3d at 1214. In *Fox*, the Tenth Circuit concluded that "while [a carrier] can require truckers to use a satellite communication system, [it] cannot under § 376.12(i) require its independent contractors to purchase or rent this system from it." *Id.* (citation modified).

Western Flyer says that if *Fox* were decided after 2017, it would have come out differently. Doc. No. 30 at 19. This is so, Western Flyer argues, because the Tenth Circuit based its decision on the fact that unlike insurance coverage, which the TIL regulations require carriers to purchase and the Seventh Circuit had allowed a carrier to charge for, the regulations did not—at the time—require carriers to purchase and use communications equipment or services. *Fox*, 839 F.3d at 1217. But that changed in 2017, when 49 C.F.R. § 395.8(a)(1) was promulgated, obligating carriers to "install and require each of its drivers to use an [Electronic Logging Device] . . . ." As a result, Western Flyer argues, communications service charges are now just like insurance chargebacks, so the reason for the rule from *Fox* disappears.

But the Tenth Circuit gave another reason for its decision. It pointed to § 376.12(j)(1), which "expressly permit[s] the carrier to charge back to truckers the carrier's cost of providing liability insurance." *Id.* A similar, detailed provision didn't, and doesn't, exist for communications services. *Id.*; *see* § 376.12. One of the Tenth Circuit's

reasons is gone, but another remains. So the Court needn't consider diverging from precedent. The Court DENIES the motion as to the mobile-communications claim.

**D. Insurance**

A carrier may charge back insurance costs to a driver, but must "specify the amount which will be charged-back to the lessor." § 376(j)(1). Mr. Jones alleges that he was charged for insurance under the Contract, but that the amount was not specified. Doc. No. 29 at 22 ¶¶ 174–79. Western Flyer reasserts that it may charge back insurance costs to Mr. Jones. Doc. No. 30 at 20. That's true; the Contract says so. Doc. No. 29-1 at 24 ¶ 3(a)(xi). What it *doesn't* appear to do is "specify the amount which will be charged-back to the lessor." § 376.12(j)(1). Mr. Jones thus plausibly alleges that Western Flyer violated the TIL regulations on this count. The Court DENIES the motion as to the insurance claim.

**E. EBE**

Mr. Jones alleges that Western Flyer charged him for something called "EBE" and that EBE doesn't appear on the chargeback list or anywhere else in the Contract, which if true would violate the requirement that the "lease . . . clearly specify" all chargebacks. § 376.12(h); Doc. No. 29 at 11 ¶ 84; 14 ¶ 105; 18 ¶ 144. Western Flyer concedes that this charge's absence from the Contract was "due to an oversight," but nonetheless argues that a "permissible catchall" in the chargeback list makes Mr. Jones's allegation implausible. Doc. No. 33 at 21. Western Flyer's "catchall" provides that it can charge back "All other expenses for which [Mr. Jones] is responsible under the [Contract], including all Appendices to same." Doc. No. 29-1 at 25 ¶ 3(a)(xxvii). Under the Contract's plain language, Mr. Jones cannot be responsible for something that neither party contends is

mentioned anywhere in the Contract. *See Landstar*, 622 F.3d 1307, 1317 (noting that "[t]he catch-all phrase of "third party fees" is insufficient to satisfy § 376.12(d) because it does not give adequate notice of any specific charges"). Therefore, Mr. Jones has plausibly alleged that the Contract does not "clearly specify" this chargeback.[6] The Court DENIES the motion as to the EBE claim.

**F. Truck Refurbishment**

Mr. Jones says that Western Flyer charged him for a "Truck Payment, and/or truck refurbishment fee when his employment ended." Doc. No. 29 at 11 ¶ 84; 18 ¶ 144; 19 ¶ 147–48. He claims this too violates the TIL regulations because "[t]he [Contract] does not provide recitations as to how [Western Flyer] computed the amount[]" it deducted from his pay. Doc. No. 29 at 19 ¶¶ 147–48; *see* § 376.12(h). Western Flyer says the fee here is the result of a third-party agreement, not before the Court, in which Mr. Jones agreed to have Western Flyer deduct its cost from his pay. Doc. No. 30 at 21. The Contract contemplates this kind of arrangement, Doc. No. 29-1 at 15 ¶ 6.7, and Mr. Jones seems to admit one did exist here, but he says it doesn't matter because Western Flyer failed to "specify the terms of [the] agreement in which [he] is a party to . . . a rental contract which gives [Western Flyer] the right to make deductions from [Mr. Jones's] compensation for purchase or rental payments." § 376.12(i).

---

[6] Western Flyer says that even if the Contract fails to mention the EBE charge, Mr. Jones was unassailably aware of it because he signed a third-party agreement in which he agreed to pay for that charge. Western Flyer did not, however, attach this agreement to its motion. The Court declines to consider the relevance of a document that neither party has filed in support of its case. Doc. No. 30 at 20–21.

Western Flyer's response: "this ignores the realities of the industry." Doc. No. 36 at 11. Perhaps that's right; it may be "impossible to detail every amount [of every charge] down to the penny." Doc. No. 36 at 11.[7] But Mr. Jones's allegations *don't* ignore the plain text of the regulation. The Court finds this allegation sufficiently plausible. The Court DENIES the motion as to the truck refurbishment claim.

**G. Escrow**

The TIL regulations require carriers to, among other things, pay interest on and promptly return "escrow funds," defined as:

> Money deposited by the lessor with either a third party or the lessee to guarantee performance, to repay advances, to cover repair expenses, to handle claims, to handle license and state permit costs, and for any other purposes mutually agreed upon by the lessor and lessee.

§ 376.2(1). Mr. Jones says "[Western Flyer] never paid interest to [him] when his money was in escrow" and "did not return [his] escrow money within 45 days of" his termination. Doc. No. 29 at 19 ¶ 152–20 ¶ 161; § 376.12(k)(5–6). On the surface, these allegations sound conclusory. But Mr. Jones alleges further that two charges appearing in his settlement statements, "Physical Damage Program" and "Group Maintenance Account," are both escrow accounts for which he received neither interest nor a prompt return of funds following his termination. Doc. No. 29 at 20 ¶¶ 155–57. Western Flyer doesn't address the Physical Damage Program or the Group Maintenance account, and because either one could plausibly be a fund, the purpose of which is "to cover repair expenses," the Court

[7] Here too the Court declines to consider a document Western Flyer claims to render Mr. Jones's claim implausible because the document is not in the record before the Court.

finds it plausible at this stage that Western Flyer violated the TIL regulations concerning escrow accounts. § 376.12(k)(5–6). The Court DENIES the motion as to the Escrow claim.

**H. Enforcer Locks and Driver Legal**

Mr. Jones lastly claims that Western Flyer violated the TIL regulations when it deducted from his pay charges for "Enforcer Locks" and "Driver Legal." Doc. No. 29 at 11 ¶ 84; 18 ¶ 144. Western Flyer doesn't contest the charges, but claims they aren't chargebacks at all. Once again, Western Flyer's support comes from alleged third-party documents—one of which it quotes directly from—that aren't before the Court. Doc. No. 30 at 23–24. Because, at the motion-to-dismiss stage, "the sufficiency of [the] complaint must rest on its contents alone" along with, in this case, the documents a plaintiff attaches to the complaint, the Court cannot consider these alleged third-party agreements. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).[8] The Court DENIES the motion as to this final TIL claim.

**III. The Court DENIES the motion to dismiss Mr. Jones's Oklahoma wage law claims.**

Mr. Jones alleges in his second count that Western Flyer violated Oklahoma wage laws, specifying that:

- Western Flyer improperly deducted from his wages "various items . . . not specified in the [Contract]." Doc. No. 29 at 11 ¶ 84; OKLA. ADMIN. CODE § 380:30-1-7(e)

[8] There is another relevant exception to this rule: "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Gee*, 627 F.3d at 1186 (citation modified). Western Flyer says the Court can consider its third-party documents under this rule, but that's wrong because Mr. Jones didn't refer to either the Enforcer Lock or Driver Legal agreements in his complaint and has neither acknowledged their existence, nor affirmed their validity.

(allowing payroll deductions only if they are "in writing, and signed by the employee . . .");

- "[Western Flyer] required [Mr. Jones] to attend a three-day training at its offices in Oklahoma City . . . before he started performing transportation services for the company" and "did not pay [him] for attending the training." Doc. No. 29 at 12 ¶¶ 89–92; OKLA. ADMIN. CODE § 380:30-1-12 ("If an employer requires an employee to undergo training . . . and such training is provided by the employer . . . , the employer . . . must . . . pay the employee at least the current minimum wage for all hours of training required.");

- Western Flyer "fail[ed] to designate a regular payday and/or [] designat[ed] a regular payday that [was] 15 days or more after pay periods." Doc. No. 29 at 12 ¶ 96–13 ¶ 101; OKLA. STAT. tit. 40 § 165.2 (2026) ("Every employer in this state shall pay all wages due their employees . . . at least twice each calendar month on regular paydays designated in advance by the employer.");

- Western Flyer failed to pay Mr. Jones on time, within 14 days following a regular payday. Doc. No. 29 at 13 ¶¶ 99–102; § 165.2 (2026) (requiring employers to pay employees within 11 days following the end of a pay period, with a 3-day grace period); and

- Western Flyer "failed to pay [Mr. Jones's] outstanding wages after terminating him from its employment. Doc. No. 29 at 14 ¶ 113–15 ¶ 116; OKLA. STAT. tit. 40 § 165.3 (2026) ("Whenever an employee's employment terminates, the employer shall pay the employee's wages in full, less offsets and less any amount over which a bona fide disagreement exists . . . at the next regular designated payday . . . .").

Western Flyer argues that Mr. Jones was never its employee, Doc. No. 30 at 25, So even if the Court takes all the above facts as true, Mr. Jones's claims must fail as a matter of law. This is so because the protections afforded by the state regulations and statutes Mr. Jones cites apply only to "employees." *See* OKLA. ADMIN. CODE § 380:30-1-7; 380:30-1-12; OKLA. STAT. tit. 40 § 165.2 (2026).

Employees are defined under the relevant portion of the Oklahoma Administrative Code[9] as "any person permitted to work by an employer."[10] OKLA. ADMIN. CODE § 380:30-1-2. But excluded from this definition are "those persons who are permissibly exempt from the Worker's Compensation statute, as defined in [OKLA. STAT. tit. 85A § 2(18)(b)(8)]."[11] *Id.*; *see* OKLA. STAT. tit. 85A § 3 ("Every employer and every employee, unless otherwise specifically provided in this act, shall be subject and bound to the provisions of the Administrative Workers' Compensation Act . . . ."). *That* statute excludes from the definition of "employee,"

> [O]wner-operator[s], who own or lease[] a . . . truck for hire, if the owner-operator actually operates the . . . truck and if the person contracting with the owner-operator is not the lessor of the . . . truck.

§ 2(18)(b)(8).

To simplify: Owner-operators aren't protected by the Oklahoma wage laws through which Mr. Jones seeks relief, but a person who leases a truck *from*, rather than *to* the

[9] The administrative definition of "employee" also applies to Mr. Jones's statutory claims. OKLA. ADMIN. CODE § 380:30-1-1 ("The purpose of the rules in [§ 380:30-1-2] is to establish the definitions . . . for enforcement by the Department [of Labor] of the provisions of Title 40 § 165.1].").

[10] More is required, however, for a plaintiff to prove their status as an employee under Oklahoma law. *Duncan v. Powers Imports*, 884 P.2d 854, 856–57 (Okla. 1994). But because Western Flyer's sole argument here is that Mr. Jones falls into the owner-operator exception, the Court declines to opine on the issue of whether Mr. Jones satisfies this rather fact-laden test. *Id.* (outlining an 11-factor test for determining whether an individual qualifies as an employee under Oklahoma law).

[11] The Code cross references a repealed section of the Oklahoma Statutes. *See* OKLA. STAT. tit. 85. The Oklahoma Legislature replaced Title 85 with Title 85A; the relevant language here is identical to the previous provisions. OKLA. STAT. tit. 85A § 2(18)(b)(8) (2026).

putative employer is not an employee because they aren't an owner-operator. *Id.* The dispute thus turns on who owned the truck. Doc. No. 29 at 27–28; Doc. No. 36 at 3–4. Western Flyer says it was Mr. Jones. For support, it cites a document that Mr. Jones attached to his complaint, where Western Flyer "confirm[ed] the receipt, from [Mr. Jones], of the Leased Equipment described in this agreement." Doc. No. 29-1 at 21 (describing a silver 2023 Freightliner Cascadia, VIN: 3AKJHHDR6PSNV1088). Mr. Jones disagrees, instead arguing "it is an objective fact that Mr. Jones made lease payments to [Western Flyer] for the truck." Doc. No. 33 at 28 n.6.

The Court cannot say, at this stage, whose truck it was. The contract provisions that Western Flyer cites indicate that Mr. Jones leased his truck *to* Western Flyer. Doc. No. 29-1 at 1; 6 ¶ 3.4.1; 21. Mr. Jones says it was Western Flyer's truck that he leased *from* Western Flyer. Doc. No. 29 at 1 ¶ 2; 19 ¶ 148. But whatever the parties' intentions in their contract, it's possible that their actual practice differed. That appears to be just what Mr. Jones is saying now. Doc. No. 33 at 28 n.6. As for the receipt, it provides that Western Flyer "recei[ved], from [Mr. Jones] [] the Leased Equipment described in [the Contract]." Doc. No. 29-1 at 21. This describes a purported factual event, not simply a statement of the parties' intentions; but the receipt doesn't make Mr. Jones's position—that Western Flyer was confirming the receipt of its own truck—implausible. *Brown v. City of Tulsa*, 124 F. 4th 1251, 1263 (10th Cir. 2025) ("[T]he court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor."). So the Court must draw the inference in favor of Mr. Jones, that despite the parties' plan, Western Flyer provided Mr. Jones one of its trucks. *Id.* As a result, Mr. Jones has plausibly alleged enough facts for

the Court to conclude that, at this stage, he is not an owner operator, and thus plausibly an employee.

Western Flyer argues that where the Contract differs from Mr. Jones's Complaint, the Contract should prevail. Doc. No. 30 at 8 (citing *Garcia v. Knee*, No. 1:15-cv-00258 RB/WPL, 2015 WL 4664655 (D.N.M. July 13, 2015)). But in *Garcia*, the court was assessing whether a lessor's statements allegedly promising not to evict the lessee constituted fraud, and the court concluded that the contract controlled because it permitted the lessor to "terminate the lease at any time . . . " and because the parties couldn't orally modify the lease. 2015 WL 4664655 at *4. In other words, the contract prevailed over inconsistent allegations because the parties were fighting about the meaning of the contract. But here, Mr. Jones isn't disputing what the parties agreed to; instead, he's saying that despite what the agreement says *would* happen, that's not what *did* happen. Perhaps the fog will lift on these murky facts down the line, but in cases like this one, the Court must credit Mr. Jones's allegations. *See Young v. Barbour Trucking Co.*, 856 P.2d 599 (Okla. Civ. App. 1993) (concluding that although his lease agreement suggested otherwise, a truck driver's testimony at trial "that he was the owner of the truck and that he actually operated it" established his status as an owner-operator).

Mindful that "[its] function [on a motion to dismiss] is not to weigh potential evidence," but to assess the complaint's legal sufficiency, the Court concludes that Mr. Jones has plausibly alleged, at this stage, that he was an employee. *Fuqua v. Santa Fe Cnty. Sheriff's Office*, 157 F.4th 1288, 1299 (10th Cir. 2025); *Stephens v. City of Anadarko*, No. CIV-06-1357-L, 2008 WL 2557759 at *3 (W.D. Okla. June 20, 2008) ("[D]efendants'

arguments would require the court to resolve factual issues, an undertaking which is also not appropriate at the motion to dismiss stage.”). The Court DENIES the motion as to the Oklahoma wage law claims.

**IV. The Court DENIES the motion to dismiss Mr. Jones’s breach of contract claim**

Mr. Jones alleges in his third count that Western Flyer breached the parties’ Contract because it failed to mediate Mr. Jones’s claims either entirely or at least in good faith [Doc. 29 at ¶ 227–30.] And despite “mov[ing] to dismiss [Mr. Jones’s] First Amended Class Complaint,” Western Flyer does not address these claims in its motion; the Court therefore denies the motion as to these claims. Doc. No. 30 at 6.

Under Oklahoma law[12], a party alleging breach of contract must show that a contract exists, breach of that contract, and damages caused by that breach. *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748 (Okla. 2021). A party breaches a contract when they materially fail to perform “a duty arising under or imposed by agreement.” *Lewis v. Farmers Ins. Co.*, 681 P.2d 67 (Okla. 1983).

Mr. Jones alleges that:

- **A contract exists:** The parties had a contract—which contains a pre-suit mediation provision, Doc. No. 29 at 23; Doc. No. 29-1 at 19 ¶ 15, and Mr. Jones sent Western

[12] The Court applies Oklahoma contract law consistent with the parties’ contractual choice of law clause. Doc. No. 29-1 at 20; *see Boyd Rosene and Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352–53 (10th Cir. 1997) (“[A] federal court sitting in diversity must apply the . . . forum state’s choice-of-law rules.”); *Williams v. Shearson Lehman Bros. Inc.*, 917 P.2d 998 (Okla. Civ. App. 1995) (enforcing a choice-of-law clause based on Oklahoma’s “general rule that a contract will be governed by the laws of the state where the contract was entered into unless otherwise agreed . . . ”).

Flyer a demand letter on September 20, 2024, invoking the [COA's] mediation provision, Doc. No. 29 at 23 ¶ 182;

- **Breach of that contract:** Western Flyer breached the mediation provision (1) by "refus[ing] to mediate [Mr. Jones's] claims concerning independent contractor misclassifications, Oklahoma wage law violations, and TIL violations . . . ," Doc. 29 at 23 ¶ 184 and (2) by "not engag[ing] in good faith resolution at the mediation," Doc. No. 29 at 23 ¶ 185, "demand[ing] to engage in individual settlement discussions during the mediation" instead of mediating the class action claims Mr. Jones also brings, Doc. No. 29 at 24 ¶ 190; and

- **Damages caused by that breach**: Mr. Jones was harmed by "expend[ing] unnecessary time and costs preparing for the mediation and participating in it," Doc. No. 29 at 24 ¶ 191.

Mr. Jones provides even more detail, Doc No. 29 180–92; 227–30, but the summary above is sufficient to state a claim for breach of contract under Oklahoma law. *See Terry v. Health Care Serv. Corp.*, 344 F. Supp. 3d 1314, 1320–21 (W.D. Okla. 2018) (concluding that policyholder who alleged (1) a valid insurance policy, (2) a "reasonable expectation of coverage" and (3) breach by defendant insurance company's failure to pay plausibly stated a breach of contract claim under Oklahoma law). Assuming, as the Court must, that his factual characterization of the failed mediation is correct, Mr. Jones has plausibly stated a claim for breach of contract.

Western Flyer doesn't argue that Mr. Jones's breach-of-contract allegations are implausible; it doesn't address them at all. [Doc. No. 30]; [Doc. No. 36.] So the Court DENIES the motion to dismiss Mr. Jones's breach of contract claim.

## CONCLUSION

Accordingly, the Court GRANTS IN PART Western Flyer's Motion to Dismiss, [Doc. No. 30], specifically:

- The Court DISMISSES Mr. Jones's claim that contingent payments violate the TIL regulations and
- DISMISSES Mr. Jones Fuel Charge claims.

IT IS SO ORDERED this 24th day of September, 2026.

David L. Russell

**DAVID L. RUSSELL**
**UNITED STATES DISTRICT JUDGE**